### HOSFORD *vs.* MERWIN and others.

On the 8th of December, 1834, F. being indebted to H. in the sum of $330, and to A. M. in the sum of $69, conveyed to the latter a farm of 100 acres owned by him in fee, subject to an annual rent payable to Mrs. L.    At the date of this conveyance the Tanners' Bank held a note against F. for $100, which A. M. was liable to pay, as endorser.    On the 23d of January, 1835, F. conveyed to H. and A. M., jointly, a piece of land containing 38 acres, which was also subject to an annual rent, payable to Mrs. L.    H. and A. M. entered into the joint possession of both lots, and for several years received and divided between themselves, the income thereof.    On the 26th of April, 1845, A. M. and H. purchased of Mrs. L. her interest in the rents chargeable on the lots, for the sum of $374,11, each paying one half, and received from her a deed of the premises.    On the 31st of December, 1846, A. M. conveyed to D. S. M. his interest in the premises, and for the consideration, received from D. S. M. his note for $600 payable in April, 1851, secured by a mortgage on the premises.    A. M. afterwards assigned the note and mortgage to N. H. as security for liabilities previously incurred by N. H. for A. M.

On a bill by H. against A. M. and his wife, D. S. M. and his wife, and N. H., claiming that the plaintiff's interest in the land bore the same proportion to that of A. M. as their respective debts bore to each other; and praying that the plaintiff's interest in the premises, and in the note and mortgage, might be declared; that the premises might be sold and the proceeds divided among the parties, in proportion to their respective rights therein; and that A. M. might be decreed to account for the rents and profits, &c.; it being established by the proof, that the deed from F. to A. M., though executed without the knowledge of H., was in fact executed for the joint benefit of H. and A. M.; and that after its execution H., on being informed of the giving of the deed assented to it, and agreed to pay, and did pay, the half of the note to the Tanners' Bank, as a part of the consideration; and that D. S. M. and N. H. had notice of the plaintiff's rights.

*Held* that the plaintiff was entitled to a decree establishing the trust in respect to the undivided half of the 100 acres, conveyed by F. to A. M., and declaring that D. S. M. took his conveyance of the land, subject to the trust in favor of H.; and that the mortgage executed by him, to secure the purchase money, was only a lien upon the half of the premises held by D. S. M. in his own right.    And the decree directed D. S. M. and wife, to release to the plaintiff his share of the premises, and that the widow of A. M. (who had died) should join in the release.

*Held also,* that the plaintiff was entitled to a decree for a partition of the premises, and to a reference, to take and state an account between him and the administrators of A. M. as to the rents and profits of the premises, and as to the disbursements on account of the land, previous to the conveyance by A. M. to

Hosford *v.* Merwin.

D, S. M.; and to a similar account between the plaintiff and D. S. M. subsequent to such conveyance. And the decree directed the payment of any balance which should be found due to either party, upon such accounting.

*Held further* that the trust was the ordinary case of a trust created by one person for the benefit of another, without his knowledge, and accepted by the *cestui que trust* upon being notified thereof. And that such a trust was not prohibited by the statute. (1 *R. S.* 728, § 51.)

*Also held* that the deed which H. & A. M. took jointly from Mrs. L. on the 26th of April, 1845, operated as a *merger* of their previous interests in the premises; and that under that deed they held the land as tenants in common.

Where the justice of the case imperiously demands it, parol evidence may be received, to show the intention of the parties to a deed; and then effect may be given to such intention, as an implied trust.

In equity the *intention* constitutes the governing principle in relation to the doctrine of merger.

The fact that a defendant is in possession of premises, claiming to hold them adversely to the plaintiff, is, in general, a sufficient ground for denying a partition in a court of equity. But when the question arises upon an equitable title set up by either of the parties, the reason of the rule fails.

A court of equity will not entertain a bill for a partition when the legal title is disputed or doubtful; because a court of law is the proper tribunal to determine such questions. But when the questions are such as belong to a court of equity, it will not suspend the proceedings without doing complete justice between the parties.

IN EQUITY. On the 8th of December, 1834, Abraham Finch, of Lexington, in the county of Greene, being indebted to the plaintiff in the sum of $330, and to Alexander Merwin in the sum of $69, conveyed to the latter a farm in Lexington, containing 100 acres, of which he was the owner in fee, subject to an annual rent chargeable thereon. At the time of the conveyance the Tanners' Bank of Catskill held a note against Finch for $100, which Merwin was liable to pay as endorser. Finch was also the owner of a piece of land, adjoining the 100 acres conveyed to Merwin, containing 38 acres, which was subject also to an annual rent. This lot he conveyed to the plaintiff and Alexander Merwin jointly on the 23d of January, 1835. Merwin and the plaintiff entered into the joint possession of both lots, and for several years received and divided between themselves the income of the whole. On the 26th of April, 1845, Merwin and the plaintiff purchased of Mrs. Livingston, the owner of the rents chargeable upon both lots, her

interest, and received from her a deed for the premises, containing the usual covenants, but subject to the leases under which they before held. To obtain this deed from Mrs. Livingston they paid $374,11, each paying one half. On the 31st of December, 1846, Alexander Merwin, for the consideration of $600, as expressed in the deed, conveyed to his brother David S. Merwin his right, title and interest in the premises. For the consideration money, David S. Merwin executed and delivered to Alexander Merwin his note for $600 payable on the first of April, 1851, with interest, secured by a mortgage on the premises. On the 8th of February, 1847, Alexander Merwin assigned the note and mortgage to Nathaniel Hull.

On the 27th of February, 1847, the plaintiff filed his bill against Alexander Merwin and his wife, David S. Merwin and his wife, and Nathaniel Hull. It alleged that the conveyance from Finch to Alexander Merwin was made for the purpose of paying and satisfying the debts which Finch owed to the plaintiff and to Alexander Merwin, and also upon the consideration that Merwin and the plaintiff should jointly pay the note for $100 to the Tanners' Bank, and that afterwards they did pay the note, each paying one half—that the plaintiff and Alexander Merwin went into the possession of the premises, and for a number of years they were leased by Merwin, with the consent of the plaintiff, to Finch—that they annually accounted together for the receipts and disbursements of the farm, and ballances were struck upon books of account kept by Merwin and signed by the parties to such settlement—that prior to the first of January, 1844, Alexander Merwin repeatedly offered to give the plaintiff a deed for half the premises, but he claimed that his interest should bear the same proportion to that of Merwin, as their respective debts bore to each other; that to save expense and litigation the plaintiff had consented to take a deed from Merwin for half the premises, and to pay him $50, which Merwin claimed to be due him, and that the plaintiff had requested him to execute a deed upon these terms, which he had refused to do.

The bill further stated that upon the conveyance of the premises by Alexander Merwin to David S. Merwin, no part of the consideration was paid, and that David S. Merwin took the conveyance with full notice and knowledge of the equities existing between the plaintiff and Alexander Merwin; and also that the note and mortgage were assigned to Hull without consideration, and that when he took the assignment he also had notice and knowledge of the plaintiff's rights and equities. The bill prayed that the plaintiff's interest in the premises, and also in the note and mortgage executed by David S. Merwin and assigned to Hull, might be declared by the decree of the court; that the premises might be sold and the proceeds divided among the parties entitled thereto, in proportion to their respective rights therein; that Alexander Merwin might be decreed to account for the rents and profits, and for general relief.

After the service of the subpœna, and before the defendants had answered, Alexander Merwin died. The bill was subsequently revived against Maria Merwin, his widow, Helen Merwin, his only child and heir at law, and Walter L. Barbour and Benjamin C. Miles, his administrators. The defendant David S. Merwin and his wife put in their separate answer, in which they claimed that by the conveyance from Alexander Merwin, David S. Merwin acquired title to the whole of the lot of 100 acres, subject to the payment to the plaintiff of one half the annual rent thereon, to which he became entitled under the deed from Mrs. Livingston, and also to the undivided half of the other lot, subject in like manner to the payment of half the rent to the plaintiff. They admitted that a note and mortgage were given for the consideration money, but denied any notice or knowledge of any equities between the plaintiff and Alexander Merwin.

The defendant Nathaniel Hull put in his separate answer, in which he stated that the note and mortgage executed by David S. Merwin to Alexander Merwin were assigned to him to secure him for endorsements which he had made and which he thereafter did make for Alexander Merwin. He admitted that he knew for what consideration the note and mortgage were

given, but he denied all knowledge of any equities between the plaintiff and Alexander Merwin.

Maria Merwin, the widow, and Helen Merwin, who was an infant, by Isaac B. Hinman, her guardian ad litem, put in their joint answer, in which they claimed that the lot of 100 acres was conveyed to Alexander Merwin in his own right, and that the plaintiff had no equitable interest therein. Mrs. Merwin also claimed that, never having assigned or conveyed her right of dower, she was entitled to dower in the whole lot as the same was conveyed to David S. Merwin.

The administrators also put in their separate answer, in which they denied all the allegations upon which the plaintiff claimed an interest in the lot of 100 acres, except his right to one half the rent chargeable thereon, acquired by virtue of the deed from Mrs. Livingston.

All the pleadings were put in without oath, and replications were filed to all the answers. Proofs were taken upon the hearing at the special term. The facts established by the evidence will be found sufficiently stated in the opinion of the court.

*J. Van Vleck & H. Hogeboom,* for the plaintiff.

*D. K. Olney & J. Powers,* for the defendants.

HARRIS, J. It was satisfactorily proved upon the hearing that the deed of the 8th of December, 1834, though executed without the knowledge of the plaintiff, was in fact executed for the joint benefit of the plaintiff and Alexander Merwin; that after the deed had been executed, the plaintiff, upon being informed that Merwin had taken the deed for their joint benefit, assented to it and agreed to pay, and did pay, the half of the note to the Tanners' Bank, as a part of the consideration of the deed; that Merwin kept in his books accounts between himself and the plaintiff severally, in relation to the farm, in which each was credited with what he had paid out for the farm, commencing with his debt against Finch at the time of the

Hosford *v.* Merwin.

conveyance, and charged with what he had received from its proceeds; that Merwin had paid a large amount for stock purchased for the farm ; and on the first of January, 1841, to equalize the accounts of the parties, Merwin was credited in his account with $217,80, for a part of the amount he had paid for stock, thus making the farm debtor to each of them, at that date, to the amount of $550,12. On the same day another entry was made in the book in which the accounts were kept, as follows: "January 1, 1841. Balance due Alex. Merwin for stock on the Finch farm, $139,97." This entry was signed by the plaintiff and Merwin. Thus it appears that at the last mentioned date each had advanced on account of the farm, including his debt against Finch, and interest, $550,12 beyond his receipts from the farm, and that there was also due to Merwin on account of what he had paid for stock a balance of $139,97. It further appears from the books, that this balance was from time to time reduced, by butter received by Merwin from the farm, until the first of January, 1845, when including interest it was $98,54. In their respective accounts with the farm, balances were also struck at the same date, by Merwin himself, making the balance of each against the farm, including interest, $716,19.

These facts leave no room to doubt, that from the first, it was the understanding and intention of both parties, that they were and should be jointly and equally interested in the property conveyed by Finch, and in all transactions relating to it. So far therefore as the plaintiff and Alexander Merwin are concerned, it only remains to inquire whether there is any legal obstacle in the way of giving effect to their intentions.

It is not denied that, but for the interference of the legislature, Alexander Merwin would have held the undivided half of the premises conveyed to him by Finch, in trust for the plaintiff. It is supposed, however, that the statute which declares that where a grant for a valuable consideration is made to one person, and the consideration for such grant is paid by another, the title shall vest absolutely in the person to whom the conveyance is made, (1 *R. S.* 728, § 51,) operates to destroy the

trust which would otherwise have resulted in favor of the plaintiff. But I do not understand the proof as bringing this case within the operation of this statute. The resulting trust which the legislature intended to prevent was a trust created by the act of the party claiming to establish such trust. The section of the statute relied upon is only applicable when the conveyance, with the consent or knowledge of the person paying the consideration, is taken in the name of another person. The object of the legislature was to prevent the creation of passive or formal trusts; and to accomplish this object it became necessary to declare void every secret resulting trust created by the voluntary payment by one person of the consideration of a conveyance to another. The legislature have carefully restricted the operation of this statute to cases in which the party claiming the benefit of the trust, himself created it. Hence it is declared in the 53d section of the same act, that the provisions of the 51st section shall not extend to cases where the alienee named in the conveyance shall have taken the same as an absolute conveyance, in his own name, without the consent or knowledge of the person paying the consideration. In this case it is proved that the deed was executed to Merwin without the knowledge of the plaintiff, and that after he had received the conveyance he informed the plaintiff that the farm had been conveyed for their joint benefit, and that each was to pay half the amount of the note at the Tanners' Bank. It is the ordinary case of a trust created by one person for the benefit of another, without his knowledge, and accepted by such other person upon being notified of such trust. Such a trust is not prohibited by statute. It belongs to what Chancellor Kent calls " that mysterious class of trusts arising or resulting by implication of law," and which the legislature have left "undefined and untouched." Such trusts arise from the obvious intention of the parties, though not expressed in the instrument with which they are connected; or they are forced upon the conscience by the manifest justice of the case. Hence it is, that such trusts are excepted from the operation of the statute of frauds. Indeed, were there no such exception in the statute, such

trusts must be recognized and enforced, from the very necessity of the case, in order to prevent the grossest injustice. · A party will not be allowed in a court of equity to shelter himself from responsibility for a fraud, under cover of a statute to prevent frauds.

This doctrine is well illustrated by the ordinary case of a purchase of real estate for partnership purposes and on partnership account.  No matter in whose name the title may be taken, whether in the name of one or all the partners, or even in the name of a stranger, it will be deemed, in a court of equity, to be held in trust for the indemnity of the partners, against the debts of the partnership, and also for their several proportions of the surplus.  The grantee is the trustee and the partners the *cestuis que trust*.  Of course, it is unnecessary to consider how far such a case would be affected by the 51st section of the statute to which I have referred.  It is only referred to as an illustration of the doctrine of implied or resulting trusts.

If the object of the parties to the conveyance from Finch to Alexander Merwin, as it is established by the testimony in the case, had been expressed in the deed itself, the instrument would, I think, have been valid as a power in trust under the 58th section of the statute relative to uses and trusts, the performance of which might have been enforced in equity. (1 *R. S.* 734, § 96.)  And where the justice of the case imperiously demands it, as I think it does in the present case, I can see no objection to the admission of parol evidence to show the intention of the parties, and then giving effect to such intention, as an implied trust.  It is not, as was supposed by the defendants' counsel upon the argument, a violation of the rule which will not allow the legal operation of a deed to be controlled by parol evidence.  The effect of the evidence is not to establish any fact inconsistent with the deed itself.  On the contrary it admits the deed, and that it operates to vest a legal estate in the grantee.  Its only effect is to engraft upon that legal estate a trust—a trust, too, entirely consistent with the terms of the deed.

I am inclined to think, also, that the deed which the plaintiff and Alexander Merwin took jointly from Mrs. Livingston operated as a *merger* of their previous interests in the premises,

and that under that deed they held as tenants in common. There can be no doubt that the deed from Mrs. Livingston, so far as it relates to the half of the premises held by Merwin in his own right, merged the conditional estate he before held. The estate he held as the grantee of Finch and that conveyed by Mrs. Livingston to him, upon the execution of the latter deed, became consolidated, and thereafter he held an absolute estate in fee in the undivided half of the premises. I think the same is also true in respect to the half conveyed by Mrs. Livingston to the plaintiff. That such was the intention of the parties, the circumstances of the case furnish the most decisive evidence. If the deed from Mrs. Livingston had been executed to Merwin alone, there would undoubtedly have been a legal merger of the estates; for then the different legal rights would have united in the same person. But even then, while he held one half of the premises absolutely in his own right, he would have held the other in trust for the plaintiff. I think the grant of the other half of the premises to the plaintiff, who was at the time of such grant entitled to an equitable estate therein subject to the same conditions as the legal estate of Merwin, operated as a merger of his equitable estate in the legal title acquired by the grant. I do not see why the conveyance to the plaintiff and Merwin jointly may not be regarded, at least in equity, as in effect the same, as if before such conveyance Merwin had executed to the plaintiff a deed co-extensive with his equitable interest in the premises. Such undoubtedly was the design of the parties when they took the deed from Mrs. Livingston; and, in equity, the intention constitutes the governing principle in relation to the doctrine of merger. I admit, however, that I have not examined " the refined and complicated distinctions" in which this branch of law learning is involved, with the same degree of diligence I should have felt to be necessary, had the rights of the parties depended upon the result. Whether the conveyance from Mrs. Livingston had the effect to vest in the plaintiff an absolute legal title to the undivided half of the premises, or not, I am satisfied that, at least as against Alexander Merwin, he is equitably entitled to

Hosford *v.* Merwin.

an interest in the premises of that extent, and that it is within the province of this court to protect and enforce his rights.

The next question relates to the rights of the plaintiff as against David S. Merwin and Nathaniel Hull, the former of whom claims protection as a bona fide purchaser of the premises from Alexander Merwin, without notice of the plaintiff's equities, and the latter, as an assignee, in good faith, of the mortgage executed by David S. Merwin to Alexander Merwin, to secure the purchase money of the premises. Upon this point it is enough to say, that the testimony abundantly shows the defence of both these defendants to be without foundation in fact. It is proved by a witness who drew the deed from Alexander to David S. Merwin, and who was present when it was executed, that Alexander told David, at the time, that he intended to sell his own interest in the farm, merely, and not to interfere with that of the plaintiff. The same witness further testifies, that when drawing the deed he inquired of the parties what should be the amount of the consideration inserted in the deed ; that Alexander replied that it should be $500 ; that David said he wanted it should be enough, and proposed to have it made $700 ; and the witness, to settle the question, inserted $600 ; of which, as he understood it, $100 was added for the personal property included in the same sale. No part of the consideration has ever been paid, nor is the same payable until April, 1851. After the deed had been executed, and the same evening, the two Merwins called on the plaintiff and informed him of the sale. Alexander told him he had sold his interest to David, and advised him to sell his interest also, stating to him that he thought it better that both of them should sell out and let David own the whole farm. David S. Merwin was present at this conversation and himself spoke with the plaintiff on the subject of a purchase of his interest. With these facts in evidence, and uncontroverted, it is impossible that David S. Merwin can for a moment be regarded as a bona fide purchaser of the plaintiff's share of the farm.

The proof is equally satisfactory that, before the conveyance by Alexander to David S. Merwin, the defendant Hull knew

of the plaintiff's interest in the premises.   And besides, he re-
ceived the transfer of the note and mortgage merely as security
against liabilities he had before incurred for Alexander Merwin.
He is not, therefore, in a situation to claim protection, even as
a bona fide assignee of the mortgage, against the equitable
rights of the plaintiff.

The plaintiff is, therefore, entitled to a decree establishing
the alleged trust in respect to the undivided half of the 100
acres conveyed by Finch to Alexander Merwin, and declaring
that David S. Merwin took his conveyance of the land subject
to the trust in favor of the plaintiff, and that the mortgage ex-
ecuted by him to secure the purchase money is only a lien upon
the half of the premises held by the mortgagor in his own right.
The decree should also direct the defendants David S. Merwin
and wife to release to the plaintiff his share of the premises, and
that the widow of Alexander Merwin, who is only entitled to
dower in the other half of the premises, join in the execution
of such release.   It must also be referred to some suitable per-
son, as referee, to take and state an account between the plain-
tiff and the administrators of Alexander Merwin in respect to
the rents and profits of the farm, and also in respect to disburse-
ments and expenditures on account of the farm previous to the
conveyance by Alexander Merwin to David S. Merwin, and
also a similar account between the plaintiff and David S. Mer-
win since the conveyance.   The usual directions upon such a
reference should be inserted in the decree.   The decree should
also direct the payment of any amount which shall, upon the
accounting between the parties, be found due from either of
them, upon the coming in and confirmation of the report.

The grounds upon which the defendants David S. Merwin
and Nathaniel Hull have resisted the plaintiff's claim, have
proved to be wholly unfounded and inequitable.   But for their
unjust pretences, this litigation might have been avoided.   It
is proper, therefore, to charge them with the costs; but the de-
fendant Hull is to be charged with no costs upon the reference,
and David S. Merwin is only to be charged with so much of

Hosford *v.* Merwin.

those costs as may be incurred upon the accounting between himself and the plaintiff.

The defendant Maria Merwin, having set up an unjust claim to dower in the plaintiff's half of the farm, is not entitled to costs. For the same reason costs should not be allowed to the administrators of Alexander Merwin. As between the plaintiff and these parties, neither is entitled to costs as against the other.

Helen Merwin was not a necessary or proper party to the suit. It is not pretended that she had any interest in the questions litigated, and no decree is claimed against her. The bill, therefore, as against her, must be dismissed with costs. Upon the taxation of his costs, however, her guardian ad litem is only to be allowed for the costs of the usual general answer of a guardian. The answer put in by the guardian was wholly unnecessary.

The plaintiff has also asked for a decree of partition. The defendant David S. Merwin is in possession of the farm, claiming to hold it adversely to the plaintiff. This, as a general rule, would be sufficient ground for denying the application. But when the question arises upon an equitable title set up by either of the parties, the reason of the rule fails. The court will not entertain a bill for partition when the legal title is disputed or doubtful, because a court of law is the proper tribunal to determine such questions. But when the questions are such as belong to a court of equity, there can be no reason for suspending the proceedings, short of complete justice between the parties. (*Coxe* v. *Smith,* 4 *John. Ch.* 271.) The plaintiff is therefore entitled to a further decree for partition, containing the usual provisions, if he shall think it advisable to continue this suit for that purpose. I am inclined to think, however, he will find it more convenient, and probably not more expensive, to institute new proceedings upon a complaint, more appropriately framed, with a view to that particular object.