Church, Ch. J.
 

 Trusts relating to real estate cannot be created by parol (2 R. S., 135, § 6); but implied trusts or those arising by operation of law are not included in the prohibition. (Id., § 7.) This statute does not preclude a party from establishing any implied or resulting trust known or recognized by the common-law. They arise usually from the acts or relation of the parties to the property involved, and not upon parol agreements. The general principles of equity and good conscience applied to certain situations and acts of the parties are used to raise presumptions of intention, and to impress property with trusts, and to clothe one party with the character and obligations of a trustee, and another with the rights and privileges of a
 
 cestui que trust,
 
 for the purpose of securing honesty and fair dealing among mankind, and to prevent fraud and injustice. The statute referred to was never intended to interfere with the application of these equitable and benign principles; but it was designed to prevent frauds and perjuries by prohibiting the creation of trusts relating to real estate, dependant solely upon mere verbal or parol conversations or agreements. There aro a great variety of cases where implied resulting or constructive trusts have been declared, which it is unnecessary to enumerate; but to none of them has the statute of frauds any application. (Perry on Trusts, §§ 125 to 168; Lewin on Trusts, 115, 157.) The transactions out of which a trust of this character arises may be proved by parol, but the trust itself must rest upon the acts or situation of the parties as proved, and not merely upon their declarations. The statute embraces only trusts which are
 
 created
 
 or
 
 declared
 
 by the parties. (Perry on Trusts, § 137, and cases there cited.) At common-law, where one person paid the consideration for real estate and a conveyance was taken in the name
 
 *548
 
 of another, a trust resulted to the person paying the money; but the 51st section of the statute of uses and trusts (1 E. S., 728) changed the rule in such a ease, and declared that no trust should result to the person paying the money, but the title should vest in the alienee named in the conveyance. The 53d section qualifies the operation of the 51st section, by declaring that it shall not extend to cases where the alienee shall have taken an absolute conveyance in his own name, without the knowledge or consent of the person paying the money. The counsel for the defendants insists that the title of the defendants’ intestate was absolute, and that the equitable rights of the plaintiff cannot be shown without a violation of the statute of frauds, and that if such evidence is admissible, it proves a case falling within the 51st section of the statute of uses and trusts, above referred to, and not within the qualification of the 53d section. These questions depend in some manner upon the construction to be given to the transactions developed upon the trial, and after a careful examination of the same, and the authorities bearing upon the subject, I am of the opinion that these positions cannot be sustained. The plaintiff in fact paid the whole or nearly the whole consideration for the premises, by the original payment to the grantor of her husband, and by paying the mortgage which was assigned to George, for her benefit. It is urged that as the original payment was before the statutes of 1848-9, in relation to married women, the money was the property of the husband, and the payment was in law made by him. Conceding this to be so, it does not impair the effect of this circumstance in this case. It was competent for the husband, except as against creditors, to recognize this equity of the wife, and secure it upon the property. The defendants cannot object to it. The transfer to Sherman and Oscar Foote, by the plaintiff and her husband, was made to secure the <¡ property for the benefit of the plaintiff, and Sherman conveyed to Oscar for the same purpose. While the title remained in Sherman and Oscar, and in the latter it may be admitted, in the view I take of the subsequent transactions,
 
 *549
 
 that the plaintiff could not have enforced her equitable rights against them by reason of the 51st section of the statute, because the case would have come within it, and the plaintiff, having united in the absolute conveyance to them, would have been chargeable with notice of its character. But it was competent for them to regard the equitable rights of the plaintiff, and to secure them either by a lawful declaration of trust, or by a conveyance, and they were under the highest moral obligation to do so. (29 N. Y., 598.) If it is conceded that the title was in Oscar, under an absolute conveyance, known and consented to by {he plaintiff, it is clear that he held such title for her benefit, and willing to carry out her wishes, in any way she desired, and that she had paid the consideration, except the mortgage then outstanding. If he had conveyed the property to her, or if he had conveyed it to a third person, with a proper declaration of trust, for her benefit, no one could have disputed her title. He did convey it to George, the defendants’ intestate by an absolute conveyance, and the circumstances under which this conveyance was given, must determine the character of the transaction. The plaintiff, as to that conveyance, occupied as favorable a position as she would, if she had actually paid to Oscar the value of the land, as the consideration for the conveyance. Oscar had a right to discharge the moral obligation imposed upon him by the original arrangement to hold the title for the plaintiff. His conveyance to George, was intended as an execution and admission of the trust by him, and if the latter took it, so as to raise an implied trust, his representatives cannot object that the form of, and circumstances attending Oscar’s conveyance, were such, that the plaintiff could not enforce the trust against him. The defendants have no better title than George had. The plaintiff requested George to take the title, and hold it for her benefit, which, in legal contemplation, means that he should take it in such a manner that he could lawfully hold it for her, and there is no finding, and no evidence, that she knew that the conveyance was absolute, or ever consented to its being so, or that he had made a will to secure her interest, in the
 
 *550
 
 event of his death. There is no evidence that the plaintiff knew how the business was transacted. It was the duty of George to have it done, so as to secure her rights, and not having done so, the common-law rule applies, and a trust results to the plaintiff, by virtue of the exception contained in the 53d section of the statute. This being so, the objection that parol evidence cannot be received to prove the transaction, and want of consideration expressed in the deeds falls to the ground. (Perry on Trusts, § 137.) The trust arises, not upon the verbal arrangements, but upon the facts, the payment of the consideration, the employment of George to procure the title for the plaintiff, and his taking an absolute conveyance in violation of his legal duty, together with the uninterrupted possession of the plaintiff, as owner.
 

 These circumstances, which are, fairly deducible from the evidence, present a clear case for raising a trust by implication. The trust arising from the payment of money, is founded upon the presumption that a person intends such payment for his own benefit, and where an agent takes property in his own name, without the knowledge or consent of his principal, a trust arises to prevent fraudulent practices, by persons acting in a fiduciary or confidential relation, and such persons are transformed into trustees
 
 ex maleficio,
 
 by operation of law, so that they may be reached by courts of equity. (34 N. Y., 307;
 
 2
 
 Atk., 254.)
 

 An examination of the numerous cases which have arisen, will show that the courts have taken a very wide i;ange of circumstances to apply the principles referred to in order to secure justice and prevent fraud. There are cases, however, where the restrictions of the statute prevent their application. The case of
 
 Bartlett
 
 v.
 
 Pickersgill
 
 (1 Eden. Ch. R. 515), is an illustration. There A. purchased land for himself, and paid for it with his own money; and it was held incompetent, under the statute of frauds, for B. to prove, by parol, that A. agreed to purchase the land for him, because the trust would depend upon the agreement. The
 
 Lord Keeper
 
 said, “ if the plaintiff had paid
 
 *551
 
 any part of the purchase-money, it would have been a reason for me to admit the evidence; or, if there had been any fraud used by the defendant to prevent an execution of the agreement ; but as it is, I think that it is a case within the statute.” The statute received a very strict construction by this court in
 
 Simson
 
 v.
 
 Schenck
 
 (29 N. Y., 598), where it was held that the fifty-first section did not apply where the conveyance, though absolute, was take n for the benefit of a third person, instead of the person paying the consideration. The case of
 
 Gilbert
 
 v.
 
 Gilbert
 
 (1 Keyes, 159), I think, must be incorrectly reported. It was decided the same year, but before the case of
 
 Simson
 
 v.
 
 Schenck, supra,
 
 and seems to hold a contrary doctrine, which can scarcely be supposed. It is probable that a dissenting opinion was published as the opinion of the court, by mistake.
 

 In this case the ordinary principles of construction need only to be resorted to. The defendants occupy no better position than George Foote did before his death. They take no better title than he had; and it seems to me clear that he could not have enforced his legal title against the equitable title of the plaintiff, because he took an absolute conveyance without her knowledge or consent, she having paid the consideration. It is not probable that he intended any fraud. He secured the plaintiff’s interest by a will in her favor, but which was revoked by his subsequent marriage and the birth of a child; and his death in another State may have prevented any other arrangement.
 

 All the equities of the case appear to be very strongly with the plaintiff, and they can be protected without violating any principle of law.
 

 The objection that Oscar could not testify to conversations with George, presents a serious question under the 399th section of the Code; but the same facts were substantially proved by other witnesses, and were not disputed on the trial.
 
 *552
 
 Wo injury, therefore, could have resulted to the defendants by receiving it.
 

 The judgment must be affirmed, with costs.
 

 All concur. Folgker, J., absent.
 

 Judgment affirmed.