# SPECIAL TERM DECISIONS.

## CIPPERLY v. CIPPERLY.

*Trusts — implied trust — Evidence — parol to explain object of written instrument.*

J. purchased lands for himself and brother, jointly, the brother paying his part of the consideration, but took the conveyance in his own name. At another time their father desiring to convey certain lands to J. and his brother, jointly, conveyed to J. upon the promise of J. that he would convey to his brother. Both conveyances were so made without the knowledge or consent of the brother. *Held*, that a trust was thereby created in favor of the brother in the undivided one-half part of the land conveyed, which trust was not defeated by the provisions of the statute relating to uses and trusts. (1 R. S. 728.)

*Held*, also, that parol evidence was admissible to establish such trust. Such evidence would not be in contradiction of the terms of the deed conveying the land, but in explanation of the reason for which it was given.

ACTION to obtain partition of lands situated in the towns of Brunswick and Grafton, Rensselaer county. The action was brought in said county by Jacob Cipperly and others against Jacob N. Cipperly and others. The lands in question were conveyed, one parcel by one McChesney, the other by Jacob Cipperly, Sr., father of plaintiff, to John J. Cipperly, plaintiff's brother. It was alleged on the part of plaintiff and evidence was given at the trial to show that plaintiff paid part of the consideration for the first named lot, and paid taxes thereon. Evidence was also given to show that at the time the conveyance from Jacob Cipperly, Sr., which was voluntary, was made, the grantor intended to convey to both sons, but that the name of John J. only was inserted in the deed; that upon the father objecting to the omission of plaintiff's name from the deed John J. promised to afterward convey to plaintiff a half interest, and that plaintiff was not a party to the transaction. Before the commencement of this action John N. Cipperly died without having made the conveyance agreed by him to be made.

Other necessary facts appear in the opinion. The action was tried at the Rensselaer circuit and special term February, 1874.

*Warren & Patterson,* for plaintiffs.

*Smith, Fursman* and *Cowen,* for defendants Jacob A. Cipperly and others.

*Martin I. Townsend,* for infant defendants.

INGALLS, J. There is no controversy in relation to the ninety-acre lot of land. In regard to the parcel of thirty-six acres I am satisfied from the evidence that John J. Cipperly, the grantee in the deed from McChesney, received the title, although in his own name, yet for the use and benefit of himself and his brother Jacob, one of the plaintiffs; and that they became in fact tenants in common of the said land. The facts proved, with the law applicable thereto, establish an implied trust in favor of Jacob to the extent of an equal undivided one-half of said land. The actual payment by Jacob of a considerable portion of the consideration is established, and I think it may be justly and legitimately inferred from the reported declarations of John J. Cipperly as proved, in regard to the purchase and the ownership of the premises, and the manner the same have been occupied and enjoyed by John J. and Jacob, and the payment of taxes and other circumstances, that Jacob has paid such a portion of the purchase-money as entitles him to be declared the owner of one-half of said premises. It is a significant circumstance, bearing upon how John J. understood this fact to be — that in all the conversations in which he participated in relation to the transaction and the ownership of Jacob, he entirely omitted to make any claim against Jacob, in any statement or pretense that he had failed to pay one-half of the purchase price of said land. By the death of John J. Cipperly, his brother Jacob is prevented by law from testifying to personal transactions had with John J. in regard to the matter, and hence is compelled to depend upon such declarations of his brother John J. made to, or in the presence of others, and the circumstances which attend the transaction, to establish his right to said premises. It is quite obvious that the relations between the two brothers were entirely amicable, and we can readily infer that their business matters were not conducted with that

degree of strictness and intelligence which is desirable where the title to land is involved. I think it may also be fairly assumed, that John J. was a more active business man than Jacob, and possibly more watchful of his own interests. It is peculiarly the province of a court of equity to ascertain, as far as possible, the equitable rights of parties, from all the facts and circumstances which surround a transaction, and reflect any light thereupon, and then enforce the same in such manner that justice may be administered agreeably to the rights of all concerned, with due regard to the law applicable to such rights. In my judgment, no impartial and candid mind can carefully examine the facts and circumstances of this case, and arrive at any other conclusion than that Jacob Cipperly is justly and equitably entitled to one equal undivided one-half of said premises. The evidence shows that the deed was taken in the name of John J., in the absence of, and without the knowledge or consent of Jacob, and, therefore, the statute of uses and trusts, in this respect, cannot have the effect to defeat the rights of Jacob Cipperly, by vesting in John J. the entire title to said premises, even though it should be conceded that such would be the effect, if Jacob knew at the time of and consented to that form of conveyance. The fifty-third section of said statute provides as follows: "The provisions of the preceding fifty-first section shall not extend to cases where the alienee named in the conveyance shall have taken the same as an absolute conveyance in his own name, without the *consent or knowledge* of the person paying the consideration." *Lounsberry* v. *Purdy*, 18 N. Y. 515. I therefore conclude that Jacob Cipperly is the owner, in equity, of one equal undivided one-half of said thirty-six-acre lot. *Foote* v. *Bryant*, 47 N. Y. 544; *Siemon* v. *Schurk*, 29 id. 598; *Gilbert* v. *Gilbert*, 2 Abb. Ct. App. 256; *Ryan* v. *Dox*, 34 N. Y. 307; *Hosford* v. *Merwin*, 5 Barb. 51. In *Foote* v. *Bryant*, above cited, the case of *Gilbert* v. *Gilbert*, as reported in 1 Keyes, 159, is repudiated upon the assumption that a dissenting opinion was there reported. It is assumed to be correctly reported in 2 Abb. Ct. App. 256.

It remains to be considered whether the plaintiff, Jacob Cipperly, has succeeded in establishing an equitable title to any portion of the wood lot in question. The conveyance in this, as in the other instance, was taken in the name of John J. Cipperly, and hence the plaintiff can only prevail by establishing a valid trust, which equity will recognize and protect. It appears from the will of Jacob Cipperly,

Sr., which was executed prior to the deed of assignment from him to his son, John J. Cipperly, that said wood lot was devised to his two sons, John J. and Jacob, jointly; that at the time the said deed was executed to John J., by his father, the latter at first refused to execute the same unless the name of Jacob was inserted, and only consented upon the agreement of John J., substantially, that he would convey one-half of the land to Jacob. The witness, William A. Derrick, who drew the deed, testifies as follows : " I stood by the side of them (John J. and his father), and read it over; Jacob Cipperly said he wanted Jacob to have one-half, and he wanted the paper to be made so; John J. said Jacob should have one-half, and Mr. Cipperly said, under those circumstances I will sign it." Again, "After I drew it up it wasn't right, and John J. said he was in a hurry and he would fix it afterward, *so that Jacob would have one-half.*" It is to be observed that the promise or agreement of John J. was not an independent understanding, but was made at the same time the deed was executed, and as a part of the transaction, and constituted a part of the consideration, and the execution of the deed by Jacob Cipperly, Sr., must be considered as a furtherance of his design to vest in John J. and Jacob, jointly, the title to said premises. The execution of the deed divested the title of Jacob Cipperly, Sr., but it, with the parol declarations of John J., and his father, and the participation by Jacob in the possession and enjoyment of said wood lot, had the effect to transfer to and vest in John J. and Jacob, jointly, the title to said wood lot. So that John J. became by the deed seized of the legal title, subject to the equitable rights of his brother Jacob.

The parol evidence was clearly admissible to show the *purpose for which the property was conveyed,* and to establish the trust in favor of Jacob. Such evidence does not necessarily have the effect to contradict the deed, but to explain it, and give effect thereto, according to the intention of the parties, by engrafting thereupon a trust, not *under the circumstances* inconsistent with it. It is well settled that parol evidence is admissible to show the purpose for which a written instrument is executed and to establish a trust. *Lounsbury* v. *Purdy,* 16 Barb. 376; *Ryan* v. *Dox,* 34 N. Y. 307; *Hutchins* v. *Hebbard,* id. 24; *Brown* v. *Lynch,* 1 Paige, 147; *Despard* v. *Walbridge,* 15 N. Y. 374. The very idea of an implied trust rests, I think, upon the assumption that the purpose is not fully defined, but is to be implied from the entire transaction, a

part of which may be evidenced by a written instrument; and the residue supplied by the declarations and acts of the parties interested. Judge STORY, in his Equity Jurisprudence, § 1195, treating of implied trusts, says: "Implied trusts may be divided into two general classes, first, those which stand upon the presumed intention of the parties." "A trust is never presumed or implied or intended by the parties, unless, taking all the circumstances together, that is the fair and reasonable interpretation of their acts and transactions." § 1196, "The most simple form in which such an implied trust can be presented, is that of money or other property delivered by one person to another to be by the latter paid or delivered to or for the benefit of a third person." In the conveyance to John J. Cipperly, his father did not reserve to himself any secret benefit or advantage, which was doubtless the evil which the provision of the statute of uses and trusts, to which we have referred, was intended to remedy.

It was designed to prevent one party who advances the consideration for land from vesting the legal title by deed in another, and at the same time secretly securing to himself the benefits of such purchase. It certainly never was intended to become an instrument of fraud by which a party could be deprived of a trust estate created by another party for his benefit simply because the name of the trustee was inserted in the conveyance and that of the *cestui que* trust omitted.

It would be a reproach to the law, if, under the circumstances of this case, Jacob Cipperly should be deprived of his interest in the land in question, when the declared intention, at the time, of both his father and brother, as clearly established by the testimony of witnesses wholly impartial, was to the effect that he should become possessed of such interest in said land. And that, too, when he was not present when the deed was executed, and his brother, John J., had by acts and declarations subsequent to the conveyance unmistakably recognized such interest. In *Hosford* v. *Merwin,* before referred to, Judge HARRIS, at page 58, aptly remarks, "A party will not be allowed in a court of equity to shield himself from responsibility for a fraud under the cover of a statute to prevent fraud." See also *Bryan* v. *Dox, supra.* The reasoning of the learned Chief Justice in *Foot* v. *Bryant* applies with force to the case under consideration. Chancellor KENT in his Commentaries (4 Kent's Com. 312), commenting upon the Statute of Uses

and Trusts, remarks: "Nor can the law be effectually relieved from its abstruseness and uncertainty so long as it leaves *undefined and untouched* that *my steriousclass of trusts arising or resulting by implication of law.* Those trusts depend entirely on judicial construction, and the law on this branch of trusts is left as uncertain and debatable as ever. Implied trusts are liable to be extended and pressed indefinitely in cases where there may be no other way to recognize and enforce the *obligations which justice imperiously demands."*

Previous to the execution of the deed by Jacob Cipperly, Sr., both John J. and Jacob were allowed by their father to cut and remove wood from the said wood lot, and after the execution of the deed, and during the life of John J., Jacob took wood from the lot, and exercised such right for some time after the death of his brother.

There is no evidence save that furnished by the recital of a consideration of $30 in the deed that John J. paid any thing for the land. It does appear that no money was paid at the time the deed was executed, as Derrick so testifies. Taking that fact into account, with the further consideration that the sum named is apparently a very insignificant price for a piece of wood land of so many acres, and also that by the will of Jacob Cipperly, Sr., the lot was devised to his two sons, and the manner the lot was subsequently occupied and enjoyed by John J. and Jacob, it may reasonably be inferred that the sum stated in the deed was never paid by John J., but was inserted as matter of form. But whether paid or not, I do not deem that circumstance controlling. There is no reasonable room for doubt but that Jacob Cipperly, Sr., intended that his said two sons should become jointly the owners of the land in question, and there is just as little, that John J. Cipperly accepted the title in his own name charged with a trust, which he agreed with his father, that he would observe and execute in favor of his brother Jacob; and which in equity and good conscience neither he nor his heirs should be allowed to gainsay or defeat.

I am convinced that the facts entitle the plaintiff, Jacob Cipperly, to be adjudged the owner in equity of the equal undivided one-half of both pieces of land last mentioned, and that the law will justify a decree to that effect. I do not discover that the plaintiff's rights are barred by the statute of limitations. *Bart-*

*lett* v. *Judd*, 23 Barb. 270; 21 N. Y. 205; *Varick* v. *Edwards*, 11 Paige, 290; *Rundle* v. *Allison*, 34 N. Y. 180.

Judgment must be entered declaring the rights and interests of the respective parties, and directing a sale of the lands described in the complaint, and the distribution of the proceeds of sale. The costs of all parties who have appealed to be paid out of the proceeds of sale.

*Judgment accordingly.*