CASSAGNE *v.* MARVIN *et al.*

(*Supreme Court, General Term, Third Department.* May 17, 1888.)

TRUSTS—RIGHTS OF BENEFICIARIES—ASSIGNMENT OF INTEREST—CERTIFICATE OF TRUSTEE.

The bondholders secured by a mortgage entered into an agreement whereby certain persons were authorized to purchase the property for them on foreclosure sale, "and to take and hold the legal title thereto, with all the rights of absolute owners." They were also authorized to sell and convey, lease, occupy, and control the property, being accountable for the management of the trust. After the sale the trustees issued to each bondholder a certificate, stating the amount of his interest. On each certificate was a note stating that the purchaser would be entitled to a new certificate on the return of this one properly indorsed. One of the owners sold her certificate, and the trustees refused to give the purchaser a new one. *Held* that, accordingly as the trust was void or valid, either the trustees had no right to give, or plaintiff had no need for, the certificate.

Appeal from special term, Saratoga county; CHARLES O. TAPPAN, Justice.

Action brought by Leocadie A. V. Cassagne against James M. Marvin and John Tayler Hall, as trustees of the United States Hotel, at Saratoga Springs. The case was tried before the court without a jury, and judgment for plaintiff, from which judgment defendants appeal. 1 Rev. St. p. 730, § 63, is as follows: "No person beneficially interested in a trust for the receipt of the rents and profits of land can assign or in any manner dispose of such interest; but the rights and interest of every person for whose benefit a trust for the payment of a sum in gross is created are assignable."

Argued before LEARNED, P. J., and LANDON and INGALLS, JJ.
*C. S. Lester*, for appellants.　*A. Pond*, for respondent.

LEARNED, P. J.　About April 15, 1875, certain persons, who severally held bonds secured by a general mortgage on the United States Hotel, on which mortgage a decree of foreclosure had been granted, entered into an agreement. By this they appointed as trustees James M. Marvin, John Tayler Hall, and Isaac V. Baker. (Baker, by subsequent action, was left out, so it is unnecessary to consider him.) These trustees were thereby authorized by these bondholders severally to attend the foreclosure sale and to act for them. They were authorized to purchase the property at such sale for these bondholders, at such terms as the trustees should think best, "and to take and to hold the legal title thereto, with all the rights of absolute owners." They were authorized to sell and convey, "to lease, occupy, manage, and control" the property; "being at all times accountable for the due and proper performance of their trust." In case of such purchase the several subscribers to the agreement agreed to accept and receive the property purchased, with the title in the trustees as aforesaid, in full payment and satisfaction of their shares of the purchase price. They also agreed to advance *pro rata* certain moneys needed to pay off liens; and, further, that, should any one neglect so to do, the shares and interest of the party neglecting, "in the trust property and avails and income thereof," should be forfeited, and should be held by the trustees for the benefit of the other parties. The trustees themselves being bondholders, it was agreed that they should have the same rights in proportion in the trust property. On the 1st of May, 1875, the property was sold under the foreclosure, and was bought by these trustees; and the same was conveyed to said Marvin and Hall, "trustees under a certain subscription agreement dated April 15, 1875, executed by certain persons interested in the United States Hotel bonds." Soon after the subscribers to that agreement executed a second agreement, reciting the refusal of Baker to act, and ratifying the former agreement, and the action of Marvin and Hall. Marvin and Hall entered upon the trust, and have since continued therein. In November, 1875, these trustees executed to Eugenia Roche, who was one of the bondholders and subscribers, a certificate stating that she was entitled to a beneficial interest in the property known as the "United States Hotel," and the furniture, "the title to which is now held in a trust by said persons, Mr. Marvin and John Tayler Hall, to the amount of nine hundred and seventy dollars, on the basis that the interest of all the beneficiaries amounts to four hundred fifty-four thousand five hundred and five dollars." "And said Eugenia Roche is entitled to share *pro rata* with the other beneficiaries in the net rents and profits thereof, and in case of a sale to a proportionate share of the net proceeds of sale." Upon said certificate there is an unsigned statement, as follows: "Note. A purchaser may re-receive a certificate on the return of this to the trustees properly indorsed." Similar certificates, varying as to amount and names, were issued to all the subscribing bondholders. Eugenia Roche assigned this certificate to the plaintiff by writing signed, but (apparently) not sealed. The plaintiff demanded a new certificate in her name. The defendants refused. One ground of refusal was that previously to such assignment Eugenia Roche had sued the trustees for a dividend on her share, and had been unsuccessful. The defendants had recovered costs against her, which had been paid. But, besides these costs, they had incurred expenses about the suit amounting to about $330, which had not been paid. They claimed, therefore, that these expenses were a lien on her interest in the property, and that she could not transfer until that money had been paid. In addition to this defense, the counsel for the trustees urged on the argument that the interests of Eugenia Roche were inalienable, and several other points which involved the nature and validity of the trust. These points have also been discussed by the plaintiff's counsel; and, indeed,

from the statement of the case, it seems that whether plaintiff has any rights must depend, in the outset, upon the validity and nature of the alleged trust, and upon the rights of Mrs. Roche in respect to the trust and the property. We may notice, first, that the provision of section 51, 1 Rev. St. p. 728, does not seem to be important here. That section intended to take away the old doctrine in equity of a resulting trust, arising from the mere payment of the purchase price. *Boyd* v. *McLean*, 1 Johns. Ch. 582. This doctrine had been carried even to the recognition of a legal estate, under the doctrine of an executed use. *Foote* v. *Colvin*, 3 Johns. 216. But, notwithstanding this statute, it has not been held that the party who took the title might not, by his voluntary act, recognize the rights of the party who paid the price. *Foote* v. *Bryant*, 47 N. Y. 544. In the present case it is true that the consideration was paid by the bondholders and the grant was made to the trustees. But the trustees have voluntarily recognized the rights of the bondholders, both by the agreement of April, 1875, and by the certificates. The bondholders, therefore, have no need of the old equity doctrine, abolished by the Revised Statutes. Next, we may notice that a trust may be declared by a written instrument not under seal. Laws 1860, c. 322; *Cook* v. *Barr*, 44 N. Y. 156. While, then, the conveyance to the trustees does not express the trust, yet the previous agreement and certificates show what it is.

Coming, then, to inquire what the trust is, and whether there be a valid trust, it may be said that there are two constructions which may be given to these papers; and that, so far as the present suit is concerned, it is probably immaterial which is taken. We may state briefly the two constructions: *First.* It may be said that the whole scheme of the trust is in violation of the statute, and that no valid trust was created; that it appears that the property was to be kept as a trust, not for any life or lives, or for a shorter time, but indefinitely, the whole property to be kept together and managed by the trustees for the benefit of the beneficiaries, so long as the trustees should choose; that under subdivision 3, § 55, 1 Rev. St. p. 728, a trust of this nature can only be for the life of the beneficiary, or for a shorter term; further, that the power of alienation is illegally suspended, because the trustees can sell only at public sale, and on not less than 40 days' notice; that, therefore, during 40 days (and it might as well be 40 years) the land was inalienable, if the trust was valid; that a suspension of the power of alienation for any time, however short, not measured by two lives in being, is a violation of the statute; that, therefore, the trustees were not empowered to sell "without restriction as to time," (*Robert* v. *Corning*, 89 N. Y. 226;) that, therefore, the trust was void, and no estate vested in the trustees, but that the title passed to the beneficiaries. *Second.* It might be said, on the other hand, that the trustees hold undivided estates in common for the several beneficiaries; that, for instance, 970-454505 of the property are held by them in trust, to receive the rents and profits, and pay them to Eugenia Roche for her life, or perhaps for a shorter period, and that these trusts are good for the several respective parts of the estate during the several and respective lives of the beneficiaries; that when these respective trusts cease by the death of the beneficiaries, then, under section 67, 1 Rev. St. p. 730, the estate of the trustees in each respective portion also ceases; that the remainder in fee, after the death of each beneficiary, belongs to that beneficiary absolutely, under the doctrine that a conveyance to one person to the use of another gives the fee absolutely to the latter. Section 49, 1 Rev. St. p. 728. Now, if we take the first construction, then Eugenia Roche was the absolute owner of her share (above stated) of the property. She could convey it to the plaintiff. But the plaintiff had no right to demand any certificate from defendants. They were not, in that construction, owners of anything more than their own respective portions, if they had any; and no certificate was needed by plaintiff. If we take the second construction, then the beneficial estate for the life of Eugenia Roche was inalienable. 1

Rev. St. p. 730, § 63. As to the remainder in fee in that portion of the property which belonged to Mrs. Roche, that remainder belonged to her unincumbered by the trust, and she could convey it. If she conveyed it to the plaintiff, then no certificate was needed from the trustee. Whether the conveyance to the plaintiff was or was not subject to the power of sale given to the trustees is immaterial, so far as the present question is concerned. That power appears to be a power in trust for the purpose of dividing the property. The right to receive rents and profits and apply them could last, as we have already seen, only during the life of the beneficiary. Whether the power to sell continues beyond that time we need not inquire. The power to sell does not need for its support the right to take rents and profits. In either view, then, the plaintiff has no right to the certificate. She can have no right to or need of such a certificate, unless we can hold that this trust to receive rents and profits, and divide them among several parties for a time, creates a valid trust, and also permits the beneficiaries to transfer their rights. A decision in her favor, therefore, involves a decision that this trust is valid, and that she is a *cestui qui trust* under the same. The counsel for the plaintiff argues that the property vested directly in the beneficiaries under the statute, and that the trustees took only a power in trust; that as to their own shares (it is not directly shown that they had any) they took an absolute title, as they could not be their own trustees. He argues, therefore, that Mrs. Roche took absolutely 997-454505 of the property in fee, which she conveyed to plaintiff. If this be so, (and we are not certain that it is not,) then the plaintiff needs no certificate. Further, she ought not to have one, as the certificate states, or at least.implies, the existence of a trust. If the plaintiff is right in this view, she is (or may become under a deed from Mrs. Roche) the owner of the share aforesaid as tenant in common with others. It has been urged that this trust was one to sell land for the benefit of creditors. Section 55, 1 Rev. St. p. 728. But this cannot be. There are no creditors. The purchase of the land made the trustees or the beneficiaries owners. The old debts were *pro tanto* or in full extinguished. If not extinguished in full, certainly no avails of this property under a sale by the trustees would be applicable to extinguish any unpaid●rt of the old debt. Besides, there can be no trust to sell, mortgage, or lease land in order to pay creditors. Section 55, subd. 1, 1 Rev. St. p. 728. And if the trustees had only a power of sale, with no valid trust to receive and apply the rents and profits, then the title would be not in them, but in the beneficiaries. Sections 58, 59, 1 Rev. St. p. 729. The judgment should be reversed, and new trial ordered, costs to abide event.