## EDWARD ALING ROBERTSON and Others, Appellants, *v.* LEWIS A. SAYRE, Respondent.

*Purchaser at a foreclosure sale — a master's deed executed to a third person, at the request of the real purchaser, vests the title to the land in such third person, and in his grantee as against the real purchaser —* 1 R. S., 728, sec. 51.

In an action, brought in relation to two lots in the city of New York, for which the defendant had obtained a quit-claim deed from one Messenger in 1881, and under which he claimed title to the premises, it was claimed by the plaintiffs that, as heirs-at-law of one David H. Robertson, they were entitled to demand that the value of the lots should be fixed and declared, and that the defendant account for said value after being allowed the amount of any legal or equitable liens or charges that he might have against the same, and that the amount so found to be due to the plaintiffs be declared a lien upon the said lots, and in default of payment of the amount found due that the lots should be sold to satisfy the same.

It was found by the referee before whom the action was tried that, at a foreclosure sale, the said Robertson had bought the two lots for fifty dollars, but gave the name of Thomas H. H. Messenger as the purchaser, and that afterwards, on January 18, 1841, at Robertson's request, the deed of the master in chancery for the said lots was made and executed to the said Messenger and delivered to Robertson, who recorded it in the office of the registrar of the city and county of New York. That this was done without the knowledge of Messenger, and when Robertson first informed Messenger thereof the latter, who had for many years previous been on very friendly social relations with Robertson and his family, became greatly offended and refused to acquiesce in the transaction, and from that time until Robertson's death they became, and continued to be "estranged." Robertson died in May, 1851, intestate, and the plaintiffs are his heirs-at-law.

Although the title to the property stood on record in Messenger's name, he was not aware of it, nor did he ever exercise or claim any ownership of it, and in 1858 he removed from New York city to Stamford, Conn. In 1881 the defendant's attorney called upon Messenger, at Stamford, in relation to the lots, and finding that Messenger did not know that the title of the property stood in his name, and had forgotten all about the matter until his memory was refreshed, the attorney returned within a day or two, bringing with him the defendant and a quit-claim deed, and, as it was claimed, by false representations induced Messenger to execute it upon the defendant's agreeing that if any of Mr. Robertson's heirs should turn up in distress the defendant would help them, and named the amount of such help at one or two hundred dollars.

*Held,* that, under the statute of uses and trusts, the title to the two lots vested in Messenger.

That, although Messenger never claimed any ownership in them, and considered that the property belonged to Robertson's heirs, and was always ready and

willing to convey the same to them, yet the defendant, who by concealment or misrepresentation of facts, and without consideration, and with full knowledge of Messenger's disclaimer of ownership, induced Messenger to give a quit-claim deed of the property to him, became vested with a good title thereto as against the plaintiffs.

That, inasmuch as Robertson was, at the time of the conveyance of the property to Messenger, insolvent, and as his design was clearly to prevent its application to the payment of his debts, the transaction came within the terms and spirit of the statute, 1 R. S., 728, § 51.

That Messenger, being invested with a title by operation of law, had the absolute right to dispose of it as he pleased; and that having this right, and having exercised it, he thereby committed no violation of law, nor did he violate any rule of public policy, and that no court could undo the act on the application of the heirs of the real purchaser at the foreclosure sale. (Per BRADY, J.)

That the evidence would not support the action which was brought by the heirs of the former owner of the land, whose interest was in form sold at the foreclosure sale. (Per DANIELS, J.)

That, as this action proceeded upon the ground that the person named as the purchaser in the master's deed was fraudulently induced by the defendant to quit-claim the land to him for a nominal consideration, the grantor in that deed was the proper person to redress that wrong, and that these plaintiffs had no right to complain of the deception by which such grantor was induced to give the deed. (Per DANIELS, J.)

APPEAL from a judgment, recovered upon the trial of this action before a referee, dismissing the complaint of the plaintiffs herein, without costs, which was entered in the office of the clerk of the county of New York on January 17, 1889.

The action related to two lots of land, in the city of New York, for which the defendant obtained a quit-claim deed from one Messenger, in 1881, and under which he claimed title to the premises. The plaintiffs claimed that, as heirs-at-law of one David H. Robertson, they are entitled to demand from the court that the value of the lots be fixed and declared, and that the defendant account for such value, after being allowed the amount of any legal or equitable liens or charges he may have against the same, and that the amount found to be due plaintiffs be declared a lien upon said lots, and, in default of payment of the amount found due, that the lots be sold to satisfy the same.

The facts, as found by the referee, are substantially as follows: At a foreclosure sale made by William Mitchell, master in chancery, said David H. Robertson bought said two lots for fifty dollars, but gave the name of Thomas H. H. Messenger as the purchaser, and,

afterwards, on January 18, 1841, at Robertson's request, the master in chancery made and executed his deed for said lots to Messenger and delivered the same to Robertson, who recorded it in the office of the register of the city and county of New York. All this having been done by Robertson, without the knowledge, assent or privity of Messenger, Robertson then first informed Messenger thereof. The latter, who had for many years previously been in very friendly social relations with Robertson and his family, when informed of Robertson's action, became greatly offended and refused to acquiesce in the transaction, and, from the time of that interview until Robertson's death, they became and continued "estranged." Robertson died in May, 1851, intestate, and the plaintiffs are his heirs-at-law.

Although the title to the property stood of record in Messenger's name, he was not aware of it, nor did he ever exercise or claim any ownership of it. In 1858 Messenger retired from business and removed from New York city, where he had lived for many years to Stamford, Connecticut.

In November, 1881, defendant's attorney, Mr. Flanders, called upon Messenger at Stamford, in relation to the lots, and was surprised to discover, at the interview, that Messenger did not know that the title to the property stood in his name; he had, in fact, forgotten all about the matter that Robertson had informed him of forty years before, until the attorney for defendant had refreshed his memory by referring to the previous title in which Robertson's name appears as assignee of the mortgage foreclosed as aforesaid.

The attorney was also surprised to discover that Messenger had a wholly erroneous idea of the value of the property, and that he was well acquainted with defendant, who had once been his family physician. Seeing the utility of these discoveries, that Messenger was ignorant of his record title; that he disclaimed any ownership to the lots by reason thereof; that he was wholly ignorant of their value, and that he was acquainted with defendant, the attorney within a day or two returned to Messenger, bringing with him the defendant and a blank quit-claim. What occurred at that interview is set forth in the eighth finding of fact. Messenger expressed his belief that the property must be eaten up by taxes and sales for

taxes during the period of forty years since the deed to him had been recorded, and that they could be worth nothing. He fully explained the transaction about the deed being made to him through Robertson, and his rebuking Robertson for thus using his name without authority; that he claimed no interest in the property; that it belonged to Robertson's heirs, some of whom he knew to be dead,. and the others were scattered and unknown to him, and that if any of them had appeared and requested a deed, he would have given it to them. Then, after some conversation concerning a supposed interest of the defendant in the lots, which interest was really nothing, although Messenger was led by defendant to believe that it. was something, Messenger said: "I will tell you what I will do; if any of Mr. Robertson's heirs should turn up in distress, I will transfer this property to you, providing you will help them," to which defendant replied, "Agreed, I will do so;" and when asked the. amount of such help Messenger named one or two hundred dollars — that being, as he supposed, the value of the lots when the deed was made to him, and before they had been eaten up by taxes. and assessments. A quit-claim deed was then made and executed by Messenger to the defendant for all his right, title and interest in the lots, but no consideration whatever was paid by defendant therefor. The other facts appearing in the case are that, about or previous to the time Robertson had the deed made in the name of Messenger, there were four judgments against Robertson unsatisfied of record. Upon these facts the learned referee finds, substantially, not only that the title to the two lots vested in Messenger under the statute of uses and trusts, but that even although Messenger never claimed any ownership to them, and conceded that the property belonged to Robertson's heirs, and was always ready and willing to convey the same to them, yet where a third person, who by conceal-ment or misrepresentation of facts, and without consideration and with full knowledge of Messenger's disclaimer of ownership induced Messenger to give a quit-claim deed of the property to him, such deed would vest a good title in him as against the plaintiffs.

*James A. Deering,* for the appellant.

*A. B. Carrington,* for the respondent.

BRADY, J. :

By the statute of uses and trusts (1 R. S., 728, § 51), the rule of the common law was changed and it was declared that no trust should result to the person paying the money on a purchase of real estate, but the title should vest in the alienee named in the convey-ance. The fifty-third section excepted cases where the alienee had taken an absolute conveyance to himself without the knowledge or consent of the person paying the money. Here, as we have seen from the facts, stating them as broadly as they can be given for the plaintiffs, it is not to be disputed that the money was paid by Robertson and the conveyance for his benefit taken by him in the name of another, namely, Messenger. The fifty-third section has, therefore, no possible application. The transaction was within the terms and spirit of the statute and was one inveighed against, inasmuch as Robertson was insolvent, and the design of it was clearly to evade the application of the purchase to the payment of his debts. The effect of section 51 on such an incident cannot be questioned. (*Garfield* v. *Hatmaker*, 15 N. Y., 478 ; *McCartney* v. *Bostwick*, 32 id., 59 ; *The Ocean N. Bank* v. *Olcott*, 46 id., 16 ; *Everett* v. *Everett*, 48 id., 218.)

Messenger being invested with the title by operation of law, albeit he disclaimed the whole proceeding, had the absolute right to dispose of it as he pleased. The payer of the money forfeited all rights which he might have acquired by taking the conveyance to himself. He deliberately incurred the penalty and sacrificed his money. Messenger having this right, exercised it, and as he committed no violation of law or rule of public policy, no court can undo the act, either for friend or relative of the purchaser in fact. Whether a court of equity would enforce the payment or performance of the peculiar consideration agreed upon for the transfer to the defendant, is not now a subject for consideration The learned counsel for the plaintiffs thinks that the case of *Foote* v. *Bryant* (47 N. Y., 544) sustains the right of his clients to indemnity from the defendant but this thought is an erroneous one. In that case it was held that the alienee could, if he chose, regard the equitable rights of the person paying the money and secure them by a lawful declaration of trust or conveyance, but if, in doing so, an absolute conveyance were executed to a third person without the knowledge of the

*cestui que trust,* it brought the transaction within the provisions of the fifty-third section already mentioned. Here, as we have seen, there was a disclaimer by the alienee of the trust, and no attempt of his of any kind to secure the equitable rights of the payer of the money. The case is, indeed, bald of any preservative of them, and the judgment must be affirmed. The result seems to be harsh, but the statute is imperative.

Ordered accordingly.

Daniels, J.:

I do not think the statute avoiding a resulting trust, when the consideration is paid by one person and the title is taken in the name of another, applies to this case. For the deed was not delivered to the grantee named in it, but he refused to accept it or in any manner sanction the purchase or the conveyance to himself. The title on this state of facts did not vest in him. But that circumstance will not support the action, which is in favor of the heirs of the former owner of the land and whose interest was in form sold at the foreclosure sale. It proceeds upon the ground that the person named as the purchaser in the master's deed was fraudulently induced by the defendant to quit-claim the land to him for a nominal consideration. But the grantor in this deed is the person to redress that wrong if it has been perpetrated. The plaintiffs have no right to complain of the deception by which he was induced to give the deed. If they have any remedy, it will be to set aside the sale for the reason that the nominal purchaser refused to accept or take the title. Whether even that is available to them is not a subject to be decided in this action which is for an entirely different object. As the case is now before the court there seems to be no other way open than to affirm the judgment.

Van Brunt, P. J., concurred.

Judgment affirmed.