CHURCH OF ST. STANISLAUS v. ALGEMEINE VEREIN.

(Supreme Court, Appellate Division, First Department.  June 28, 1898.)

1. CONVEYANCE IN TRUST—EVIDENCE.
    The plaintiff, then unincorporated, desiring to procure a place of worship. secured certain loans, and, the archbishop disapproving its purpose, certain members of the society organized the defendant corporation, to which the real property was conveyed, the first payment being made with said loans. The defendant adopted a by-law providing that "the time of the existence of the corporation is not prescribed, but shall exist until the parish of St. Stanislaus decides to make a change. Said change, however, can only be made when the parish will be able to pay the moneys loaned." The congregation immediately took possession and absolute control, paid the interest on the mortgages, and repaid the loans. The defendant remained absolutely dormant, and for many years never claimed the property. *Held*, in an action to compel a conveyance to the plaintiff, that, as there had been no consent to an unconditional and absolute conveyance of

the property to the defendant, the latter's fraud could not be protected by 1 Rev. St. p. 728, § 51.

:2. EVIDENCE—BY-LAWS.

The defendant's by-laws were identified by one of the original incorporators and original trustees of the defendant, were signed by all the trustees, and by all the incorporators except two, which signatures were proved, and they purported to be the by-laws of the defendant. *Held*, that these facts constituted sufficient evidence of their authenticity.

Appeal from special term, New York county.

Action by the Church of St. Stanislaus against the Algemeine Verein. From a judgment for plaintiff, defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Edward C. James and A. I. Elkus, for appellant.
Denis A. Spellissy and Geo. M. Van Hoesen, for respondent.

VAN BRUNT, P. J.   This action was brought to compel the defendant to convey to the plaintiff certain real estate.   The plaintiff is a religious corporation organized on the 5th of June, 1884, as a Roman Catholic Church, under chapter 60 of the Laws of 1813, and ·chapter 45 of the Laws of 1863.   The defendant is a corporation, and ·was organized on the 3d day of June, 1878, under the act of April 13, 1848, for the furtherance of religious opinion, etc.   The plaintiff had ·existed as an unincorporated religious society from 1873, down to ·the date of the incorporation, in 1884; and had worshipped in various ·churches prior to 1877.   At that time the priest of the society, desirous of obtaining a place of worship of its own for the society, ·made an appeal to the congregation for contributions towards the ·purchase of a building.   A considerable sum was advanced, in respect to some of which advances it was the understanding that the ·lenders should get their money back; and a committee was appointed ·to look for a church building.   The committee selected a building, and thereupon application was made to the cardinal archbishop of New York for leave to incorporate the society, and to purchase the building selected.   The cardinal refused his permission, and plans were ·devised for the purpose of circumventing him, and of buying the property for the congregation without his leave.   Accordingly, the defendant was organized composed of members of the congregation, the first payment upon the property was made by money raised by the ·congregation as above mentioned, and a conveyance of the property ·was made to the defendant.   After the organization of the defendant, ·certain by-laws appear to have been adopted, section 10 of which pro- ·vides as follows:

"The time of the existence of the society is not prescribed, but it shall exist until the church or parish of St. Stanislaus decides to make a change. Such .a change, however, can only be made when the parish will be able to pay the moneys loaned by the members of the society."

The congregation immediately took possession of the property, :made alterations, paid the expenses of those alterations, made what- ·ever repairs were needed from time to time, paid the interest on the .mortgages, repaid to members of the defendant the sums which they

had loaned or advanced for the purchase of the property, and in fact had such complete control and management of the property that those persons who became connected with the society subsequent to the purchase of the property never heard of the connection of the defendant therewith, and supposed that the title was in the church corporation. The defendant had no meetings of trustees or members, transacted no business, and gave no signs of life until in 1892, when the priest who was in charge of the congregation undertook to raise money by mortgaging the church property, and it was revealed that the title stood in the name of the defendant. Soon after this, some of the members of the defendant conceived the idea of claiming the land and church building as its property. After many negotiations in reference to the matter, this action was brought. The court below gave judgment in favor of the plaintiff, and from that judgment this appeal is taken.

The defendant substantially concedes the plaintiff's case, but relies upon the statute (1 Rev. St. p. 728, § 51) to defeat its claim; and has complied as far as possible with the requirements indicated in the case of Haigh v. Kaye, 7 Ch. App. 469, where the court say:

"If a defendant means to say that he claims to hold property given to him, for an immoral purpose, in violation of all honor and honesty, he must say so in plain terms, and must clearly put forward his own scoundrelism, if he means to reap the benefit of it."

In the case at bar, notwithstanding the evident attempt of the present members of the defendant to cheat, defraud, and steal from the plaintiff that which rightfully belongs to it, we think that that which is justly characterized in the case cited as their scoundrelism cannot succeed. It seems to be a well-settled rule of law in this state that unless it appears that the person paying the consideration has consented to an unconditional and absolute conveyance of the property to another without any recognition or intimation in respect to his rights, the statute in question will not protect the attempted fraud; and it is further held that no presumption can be indulged in to support such a defense. Schultze v. Mayor, etc., 103 N. Y. 311, 8 N. E. 528. Applying this principle to the case at bar, there is no evidence that this conveyance was understood by the unincorporated society to have been taken by the defendant unconditionally, and without any recognition of their ultimate rights. In fact, the acts of all the parties indicate the contrary. From the very moment of the conveyance down to 1892, when the discovery was made that the title stood in the name of the defendant, the plaintiff acted as the owner, had possession and use of the property, paying incumbrances, and paying off moneys which had been loaned by members to effect its purchase, the defendant giving no signs of existence during all this period, and only exhibiting life when some of its members became actuated with the highly moral purpose of stealing this property from its true owners. And, furthermore, there is, we think, in the by-laws above quoted, an express recognition by the defendant of the equitable right of the plaintiff to a conveyance of this property whenever it desired to obtain the same. It is urged that these by-laws were not sufficiently proved. It is difficult to see how better proof of their authen-

ticity could have been given. One of the original incorporators and original trustees of the defendant identified them as the by-laws of the defendant; they are signed by all the trustees and by all the incorporators except two, and these signatures are proven by the witness; they purport to be the by-laws of this defendant; and this evidence is in no way challenged, the objection to their admission being that there was no sufficient evidence that they are the adopted by-laws of the defendant corporation. It is difficult to see how more convincing evidence of their authenticity could have been given.

It is further apparent that this conveyance was not understood to be an absolute conveyance to the defendant, but partially as security for the money loaned by the members of the defendant to effectuate the purchase, not only from the language of the by-laws, but from the fact that the members of the defendant and the plaintiff understood that the latter was under obligation to repay the moneys loaned by the former for the purchase of the property. What interest had the plaintiff in repaying the moneys advanced by the members of the defendant if the property was understood to belong to the defendant?

There were other exceptions to the reception of evidence, some of which were well taken; but such evidence in no way harmed the defendant, in that the facts above stated, and upon which the judgment of the court proceeded, were established by undisputed evidence which it was in no way attempted to contradict.

We are of opinion that the court below was entirely justified in the conclusion to which it came, and that the judgment appealed from should be affirmed, with costs. All concur.