(115 App. Div. 89)

FAGAN v. McDONNELL et al.

(Supreme Court, Appellate Division, Second Department. October 12, 1906.)

1. TRUSTS—RESULTING TRUST—PAYMENT OF PURCHASE MONEY.

Real Property Law, Laws 1896, p. 592, c. 547, § 207, in relation to conveyances, provides that any declaration of trust may be proved by a writing subscribed by the person declaring the same, and section 74 (page 570) provides that no use or trust results from the payment, to the person paying the consideration or in his favor, unless the grantee takes the same as an absolute conveyance in his own name without the consent of the one paying the consideration, or purchases the property in violation of some trust with money or property belonging to another. One D. paid the consideration for a conveyance and caused it to be made to his niece, who, at the time, knew nothing of it, but subsequently learned of it. Thereafter the niece, in D.'s presence executed a deed, blank as to grantees, and also executed her bond, secured by a mortgage on the premises, upon which money was borrowed and used by D. to improve the property. The deed remained in his possession until his death, when it passed into the possession of his widow. D. occupied the property and had the beneficial use of it until his death, 10 years after the conveyance was made, whereupon his widow and sole devisee succeeded to the possession and use until her death 12 years after the making of the conveyance. The niece never asserted her title or right to possession until after such events. *Held*, that the niece was not a trustee in a resulting trust.

[Ed. Note.—For cases in point, see vol. 47, Cent. Dig. Trusts, §§ 102–108.]

2. ESTOPPEL—PERMITTING IMPROVEMENTS.

The facts were not such as to estop the niece from claiming title to the property, no one having been misled or injured by any act of hers.

3. EJECTMENT—RENTS AND PROFITS—STATUTES—PERIOD FOR WHICH PROFITS ARE ALLOWED.

Code Civ. Proc. § 1531, provides that in an action to recover real property, plaintiff, on recovery, is entitled to damages consisting of the rents and profits or the value of the use and occupation for a term not exceeding six years. *Held*, that the six year period is to be computed with reference to the time of the commencement of the action, so that plaintiff may recover for six years before the commencement of the action and also during its pendency.

[Ed. Note.—For cases in point, see vol. 17, Cent. Dig. Ejectment, §§ 449–451.]

4. SAME—COMPUTATION OF PERIOD.

Where, in ejectment, the summons was served on tenants of the property, and was subsequently served on the one claiming title, the tenants not being united in interest with the latter defendant, the action was not commenced against him under Code Civ. Proc. § 1531 until the service upon him.

[Ed. Note.—For cases in point, see vol. 17, Cent. Dig. Ejectment, §§ 449–451.]

5. SAME—ALLOWANCE FOR EXPENSES.

Code Civ. Proc. § 1531, provides that in ejectment, if plaintiff recovers, he is entitled to recover as damages the rents and profits or the value of the use and occupation for a term not exceeding six years. *Held* that, in determining the value of the use and occupation by deducting actual expenses incurred from the gross rental value, it appearing that the agent and janitor of the property in question performed like services in respect to several other pieces of property for which each received a gross sum, an amount claimed for agent and janitor services, arrived at by apportioning the total sums among the several pieces of property, should have been allowed in the absence of any evidence showing the amounts excessive.

100 N.Y.S.—41

**6. SAME—REIMBURSEMENT OF INTEREST ON MORTGAGE.**

    Where, in ejectment, it appeared that defendant had paid interest on a mortgage executed on the property by plaintiff, defendant was entitled to be reimbursed the interest so paid.

**7. SAME—INTEREST ON RENTS AND PROFITS.**

    Where, in ejectment, it appeared that plaintiff was entitled to recover, but that the value of the use and occupation was more than defendant had actually received in rents from the property, interest should not be computed in favor of plaintiff on quarterly rests, but only from the time of the commencement of the action.

    [Ed. Note.—For cases in point, see vol. 17, Cent. Dig. Ejectment, §§ 446-448.]

    Jenks, J., dissenting.

Appeal from Trial Term, Kings County.

Action by Mary E. Fagan against Charles E. McDonnell and others. From a judgment in favor of plaintiff, defendant McDonnell appeals. Reversed, and new trial granted, unless plaintiff agree to reduce the recovery to a specified amount, in which event affirmed.

Argued before HIRSCHBERG, P. J., and WOODWARD, JENKS, RICH, and MILLER, JJ.

Herbert T. Ketcham (James M. Gray, on the brief), for appellant.
Herbert C. Smyth (Charles C. Sanders, on the brief), for respondent.

MILLER, J. The plaintiff is armed with the legal title, and the judgment in her favor in this ejectment suit must be affirmed, unless the equitable title is in the defendant. The proof shows that, on October 31, 1882, one Michael Dalton paid $800 for two parcels of land including the one in question, and with full knowledge took a conveyance to this plaintiff, his niece, who subsequently learned of it; that the plaintiff on or about October 25, 1883, in the presence of said Dalton, executed a deed of the premises, blank as to grantees, and, on the following day, her bond for $2,000, secured by a mortgage on the premises, upon which the sum of $2,000 was borrowed and used by Dalton to improve the property; that said blank deed remained unchanged in Dalton's possession until his death when it passed into the possession of his widow and upon her death into that of the defendant; that Dalton occupied the property and had the beneficial use of it until his death in 1892, whereupon his widow, his sole devisee, succeeded to such possession and use until her death in 1894, when the defendant took possession claiming as her residuary legatee; that the plaintiff never asserted her title or right to possession until shortly before the commencement of this action. While Dalton had uninterrupted possession, it does not appear that he ever claimed it under an equitable title or in hostility to the plaintiff's title; neither his will nor that of his widow specifically refers to this property.

The learned counsel for the appellant invokes the equity powers of the court upon several distinct grounds, which I will summarize and state what seems to me the patent and conclusive answer to each, to wit: First, that the proof establishes an agreement of the plaintiff to hold the title as trustee, which has been so far performed as to take the case out of the statute of frauds, or, at least, that equity will not suffer the statute of frauds to be used as an instrument to perpetrate

a fraud. It will be necessary to refer only to the fundamental error involved in the assumption that there was such an agreement, because there is not a scintilla of evidence to warrant it; on the contrary there could have been no agreement before the conveyance of which the plaintiff was ignorant, and the subsequent conduct of the parties, upon which so much stress is placed, is as consistent with the absence of an express agreement subsequent to the conveyance as was the conveyance itself with the absence of any agreement or even knowledge on the plaintiff's part prior thereto. Counsel asks the court to infer an agreement from the circumstances upon which he relies to take it out of the statute of frauds. The error of this is so patent that it is unnecessary to consider whether the circumstances relied upon would have been sufficient, had the agreement itself been proved. Second, that the blank deed, conceding it to be insufficient to pass title (see Allen v. Withrow, 110 U. S. 119, 3 Sup. Ct. 517, 28 L. Ed. 90), proves the trust, and considered solely as an evidentiary fact satisfies the statute of frauds; but this proposition like the last is based upon a false premise.

It is true that the statute respecting the creation and proof of trusts (now section 207, Real Property Law, Laws 1896, p. 592, c. 547) simply enacts a rule of evidence, but the writing relied upon must be sufficient to prove the nature and extent of the trust, and cannot be aided by parol evidence. Cook v. Barr, 44 N. Y. 156; Hutchins v. Van Vechten, 140 N. Y. 115, 35 N. E. 446. The blank deed proves nothing except that at the time the plaintiff was willing to convey the property. The very fact that Dalton had this blank deed and made no use of it is suggestive to my mind of a deliberate intent to leave the title in the plaintiff; but whatever inferences different minds might draw from the circumstance, it utterly fails to prove that there was an express contract that the plaintiff should hold the title in trust. Third, that the plaintiff is estopped from asserting any title. This assertion also is based upon a fundamental error. I followed the ingenious argument of counsel, and have read his voluminous brief in vain to discover a single circumstance tending to show that any one has been misled or injured by any conduct of the plaintiff. Dalton certainly was not misled when without her knowledge he took title in her name presumptively knowing that the transaction vested the title in her, and that no trust to him could result therefrom (1 Rev. St. [1st Ed.] p. 728, pt. 2, c. 1, tit. 2, § 51–53, now section 74, Real Property Law, c. 547, p. 570, Laws 1896), he was not injured by her conduct in allowing him to have the beneficial use of it or in borrowing money upon her bond and mortgage with which to improve it so as to increase the value of such use; and while it is asserted that he expended money in improvements in excess of the sum so borrowed, there is no proof of it, unless it can be inferred from the testimony that the property is now worth $4,500, but this increase can easily be accounted for by the rise in values and the increase in the cost of building materials; and even if he did expend his own money in improvements, there is not the slightest evidence that he was induced to do so by any promise or agreement of hers, and concededly the value of the use was much more than the entire amount expended; besides, upon the record here, we must hold

that he acted throughout with open eyes, knowing that the title was in his niece; and certainly neither the widow nor the defendant can claim to be injured by the enjoyment of the beneficial use of the property. If I have understood the argument addressed to us by the learned counsel for the appellant, the foregoing is a fair summary of it. However, I do not understand him dogmatically to assert that any one of the several positions taken by him is invulnerable, but, rather, that all are advanced with the hope that their combined force may persuade us to impress a trust upon the plaintiff's title so as to secure what we may deem to be just in this particular case; and it is urged that inasmuch as equity may imply a trust from facts, i. e., the acts and conduct of the parties independent of their verbal arrangements, we may imply a trust in this case without doing violence either to the statute of frauds or to the statute against resulting trusts hereinbefore referred to.

The statute of frauds may be eliminated from the discussion because, as already shown, there is not a scintilla of evidence to prove an express agreement, and, while I do not question the general statement that a trust may arise from facts, my research has failed to disclose a case, and certainly none is cited, in which a trust has been implied from the facts involved in the case at bar since the abolition of the common-law rule by 1 Rev. St. (1st Ed.) p. 728, pt. 2, c. 1, tit. 2, §§ 51–53. Of course at common law an implied or resulting trust would have arisen from the single fact of the payment of the consideration by Dalton, and this upon the theory that the person paying the consideration must have intended to have the beneficial interest. But here the statute steps in and says that no trust can result from such a transaction, but that the title shall vest in the grantee, so, Dalton, presumed to have known the law, must be supposed to have intended the result provided by the statute. I have supposed that implied trusts, to which class resulting trusts belong, always arose from the presumed intention of the parties, from some instrument which, though failing in express terms to create a trust, clearly showed such to have been its purpose, from some situation in which the intention of the parties could only thus be effectuated, or from some act unequivocally showing such to have been the intent, and that constructive trusts, sometimes, I think, inaccurately termed implied trusts, were created by the courts without regard to the intention of the parties to prevent the abuse of positions of trust and confidence and to circumvent fraud. Certainly the plaintiff is not a trustee ex maleficio. She did not obtain the title by any fraud, artifice, or misrepresentation, by the misuse of any confidential or fiduciary relation, or pursuant to any agreement; and it seems to me we cannot say that the parties intended to create a trust except we do it in the teeth of the statute. The title of course vested eo instanti upon the delivery of the deed from Bliss. If Dalton had died the following day, no one would seriously question that the absolute title had vested in the plaintiff, because a case would then be presented barred of facts except those from which the statute declares no trust can result. It seems to me, therefore, that the appellant must take either of two horns of the dilemma; either that the absolute title

vested in the plaintiff upon the delivery of the deed from Bliss, and that she subsequently divested herself of her beneficial interest by allowing others to use the property, or else that her subsequent conduct may be referred back to the time of the deed so as to limit the estate which she took under it although she had no knowledge of it at the time of its delivery. I did not suppose that the owner of real property could divest himself of his beneficial interest by allowing others to enjoy it, in the absence of a declaration of trust evidenced by the writing required by the statute, or that the nature of an estate created by deed could rest in uncertainty until determined by the subsequent conduct of the parties; the resulting insecurity of titles attendant upon either of these propositions is too apparent for either to be adopted in the teeth of statutes clearly defining the method by which estates in land may be created.

Conceding for the moment that the legal title should yield to the intention of the parties, I am utterly unable to understand how such intention can be demonstrated from this record, and surely nothing short of a demonstration will suffice to overthrow the legal title. If it were clear that the parties intended a trust, and to my mind other hypotheses are equally warranted, how are we to know its duration? To be sure, the plaintiff was silent eight years after the death of her aunt, and it may be assumed that the defendant's possession was under a claim of title adverse to hers, it may also be assumed that she made the statement attributed to her by the defendant's counsel upon the occasion of his requesting her to execute a deed, but the statute has fixed 20 years as the period required for an adverse possession to ripen into a title, and it seems to me that this statute sufficiently assures repose of titles without the intervention of equity, particularly when the basis of such intervention is the silence and equivocal statements of a woman probably ignorant of her rights.

I understand it to be conceded that had the plaintiff orally agreed subsequent to the conveyance from Bliss, and we have seen there could have been no prior agreement, to hold the property in trust, such agreement would be void as within the statute of frauds, and would furnish no basis for equitable interference, because though equitable doctrines are flexible when dealing with cases of fraud, the breach of a void agreement is a moral, and not a legal, fraud (Wheeler v. Reynolds, 66 N. Y. 227–234; Levy v. Brush, 45 N. Y. 589); but it is urged that, as the plaintiff has committed neither moral nor legal fraud, a court of equity may interpose, and, upon facts thought to be sufficient to satisfy its conscience, impress a trust upon her legal title. The authorities relied upon in support of such dangerous exercise of remedial jurisdiction do not warrant it. Western Union Tel. Co. v. Shepard, 169 N. Y. 170, 62 N. E. 154, 58 L. R. A. 115, did decide that a trust not dependent upon the will of the parties need not be created by express language, nor be one of the four express trusts permitted by statute —a proposition which no one questions; but that case was decided upon the terms of a reservation contained in a deed, from which a trust was implied because only so could the reservation be given effect. No one disputes the proposition, as stated by Church, Ch. J., in Foote v. Bryant, 47 N. Y. 544, that a trust arising "from the acts or relation

of the parties to the property involved, and not upon parol agreements," is not included in the prohibition of the statute (2 Rev. St. [1st Ed.] p. 135, pt. 2, c. 7, tit. 1, § 6, now Real Property Law, Laws 1896, p. 592, c. 547, § 207), but it does not follow that a trust should be implied from the facts involved in the case at bar, and indeed the logic of Foote v. Bryant is against thus implying a trust. In that case A., a married woman, paid the consideration for a conveyance to her husband, and united with him in a deed to their sons B. and C., pursuant to an agreement that they would hold the property in trust for her, and it was conceded that while the title thus stood this agreement could not have been enforced, being by parol it was void, and as A. was chargeable with knowledge of the absolute character of the conveyance to B. and C., the case came within the statute against resulting trusts, but B. and C. recognized the rights of A., as they had a right to, and at her request conveyed to D. who promised A. to take and hold the title for her benefit, but without her knowledge took an absolute conveyance; thus the case was plainly within the exception expressly enumerated by the statute, and D. was a trustee ex maleficio. Wood v. Rabe, 96 N. Y. 414, 48 Am. Rep. 640, dealt with the question whether a parol agreement was within the statute of frauds, and while the agreement itself doubtless was void, it was held that a trust could be implied from the agreement in connection with the circumstances to prevent the abuse of a position of trust and confidence, a situation very far from the one under discussion. In Jeremiah v. Pitcher, 26 App. Div. 402, 49 N. Y. Supp. 788, there was no question of implied or resulting trusts. That case turned upon an express agreement between persons sustaining relations of the greatest trust and confidence which had been fully performed by one party, and, therefore, did not come within the statute of frauds. In Church of St. Stanislaus v. Algemeine Verein, 31 App. Div. 133, 52 N. Y. Supp. 922, the conveyance involved was within the exception of the statute, for the reason that the society, for whose benefit it was taken, did not know that it was taken unconditionally, and without any recognition of its ultimate rights.

I am unwilling to vote to overthrow the legal title upon the evidence in this case; but I think that too large a sum was awarded as damages, and that the judgment should be modified in this respect. The plaintiff was entitled to recover as damages "the rents and profits or the value of the use and occupation of the real property recovered, for a term not exceeding six years." Section 1531, Code Civ. Proc. The six year period is to be computed with reference to the time of the commencement of the action, so that the plaintiff may recover for six years before the commencement of the action and also during its pendency. Willis v. McKinnon, 178 N. Y. 451, 70 N. E. 962. The summons was served on the defendant McDonnell on September 13, 1902. It was served on other defendants, who were tenants, July 2, 1902, but as such defendants were not united in interest with the defendant McDonnell, we think the action was not commenced against him until the service of summons upon him. Upon the proof in this case that date would certainly be regarded as the date of the commencement of an action against him in determining whether the statute

of limitations had run (section 398 of the Code of Civil Procedure), and we see no reason why the same date should not be adopted in computing the damages provided by said section 1531. In this respect the court erred by adopting the earlier date.

One witness for the plaintiff testified that the value of the use and occupation of the premises was $360 a year. A witness for the defendant testified that the rental value was $360 a year. We think it plain from the surrounding circumstances that both witnesses were referring to gross rental value, and not to the value of the use and occupation. It appeared without dispute that the total receipts from the property during the period for which damages were allowed were $2,472, and it is not claimed that the property was negligently managed, nor was any attempt made to question the reasonableness or necessity of the expenditures shown to have been made. The statute intends that the plaintiff shall have indemnity (see Wallace v. Berdell, 101 N. Y. 13, 3 N. E. 769), and we think that under the circumstances disclosed the plaintiff will be fully indemnified if the value of the use and occupation is determined by deducting the actual expenses shown to have been incurred from the gross rental value of the property which was more than the actual receipts. However, the court did not allow an item of $82.18 for miscellaneous repairs, an item of $248.20 for services of the agent, and an item of $197.17 for services of a janitor. No reason appears why the item of $82.18 was disallowed. The other items appear to have been disallowed because there was no proof that the amount claimed was properly chargeable against the property in question; it appearing that the agent and janitor performed like services in respect of 28 other pieces of property for which each received a gross sum, but the amount claimed was arrived at by apportioning the total sums among the several pieces of property. This seems to have been a fair way of apportioning the proper charge to each; and, in the absence of some evidence on the part of the plaintiff tending to prove that the sums so charged were excessive, they should have been allowed. Two other items were disallowed. One including the amounts paid for insurance; the other the interest paid on the $2,000 mortgage made by the plaintiff. These sums appear to have been disallowed upon the theory that they could be recovered on the foreclosure of the mortgages, but it is unquestioned that the mortgage was a lien upon the premises, and that the interest was due; and it is not disputed that such payments for interest and insurance were actually made. It is asserted that the defendant now controls the mortgage, because it is owned by the Roman Catholic Diocese of Brooklyn, but I fail to perceive how that can affect the question, or why the defendant should not be reimbursed in this action. He doubtless saved the plaintiff's property from a foreclosure, and should not be driven to another action to recover proper charges against the property paid in good faith. The court also allowed interest computed on quarterly rests, amounting to the sum of $848.60. It seems that interest may be included where the jury is of opinion that it is necessary to complete indemnity (Vandevoort v. Gould, 36 N. Y. 639), and there is authority for computing interest in such case upon quarterly payments when reckoned upon

rents actually received (Jackson v. Wood, 24 Wend. 443). It is within common knowledge that the full rental value of real property of the kind involved is rarely received throughout a period of several years. The value of the use and occupation hereinbefore stated is more than the defendant has actually received, and we think complete indemnity will be afforded if interest is computed only from the time of the commencement of the action.

Upon this basis I have computed the sum due the plaintiff at the time of the judgment to be $1,192.32, and advise that the judgment be reversed and a new trial granted, with costs to abide the event, unless the plaintiff stipulate to reduce the recovery to said sum; and, in that event, that the judgment so modified be affirmed, without costs of this appeal to either party. All concur, except JENKS, J., who dissents.

JENKS, J. I dissent, and vote for a reversal and a new trial. Our statute that abolishes a trust arising upon proof of the payment of the consideration was aimed only at the common-law trust which resulted from the fact of such payment. Carr v. Carr, 52 N. Y., at page 260; Woerz v. Rademacher, 120 N. Y., at page 67, 23 N. E. 1113. Resulting trusts are not prohibited by our statute, but are well recognized. Western Union Tel. Co. v. Shepard, 169 N. Y. 170–181, 62 N. E. 154, 58 L. R. A. 115: "Resulting trusts arise when the legal estate is disposed of or acquired, not fraudulently, or in violation of any fiduciary duty, but the intent in theory of equity appears or is inferred or assumed from the terms of the disposition or from the accompanying facts and circumstances that the beneficial interest is not to go with the legal title." Pomeroy Eq. Jur. (3d Ed.) § 155. Such a trust may be established by parol evidence. Foote v. Bryant, 47 N. Y. 544. In the language of Church, J., in that case: "It arises, not upon the verbal arrangements, but upon the facts." See, too, Wood v. Rabe, 96 N. Y. 414, 48 Am. Rep. 640; Fowler, Real Property Law, p. 657—citing authorities. Professor Reeves, in his work on Real Property, after an exhaustive review of the subject, states his conclusion, which seems to me cogent and sound:

"Thus, while the primary and original purpose of this section of the New York statutes of uses and trusts was to prevent the indirect creation and existence of what would be in effect passive express trusts, the courts have thrown the safeguard of a wise construction around it, and so prevent it from becoming an instrument of fraud or injustice. They also raise a trust, notwithstanding the statute, where it appears, from the instrument of conveyance, or from some other instrument, or from clear and explicit evidence, that such was the intention of the parties—cases in which the transaction is relieved from the effects of a secret trust."

I think the mere fact that the plaintiff did not know of the conveyance to her until after it was made, did not in the eye of the law arm her with the legal title as against her uncle who paid the consideration money so as to forbid the establishment of a resulting trust in his favor and in favor of those standing in his shoes. The "transaction" was not the conveyance as an isolated fact, but that conveyance coupled with her knowledge thereof, and the policy of the law is to let in

evidence of all the facts which were substantially contemporaneous with the transaction, grew out of it or were articulated with it.

The plaintiff was the unmarried niece of him who paid the entire consideration. She lived in this city, and on friendly terms with him. No presumption of advancement arose from their relationship. Perry on Trusts (5th Ed.) 144, and authorities cited; Bishop Modern Equity Jurisprudence, 221. The only deed produced was evidently returned to her uncle after record, and had always been in his possession or in that of those succeeding him, or under his control. Shortly after she learned of the conveyance, the plaintiff executed and delivered to her uncle a deed of conveyance in blank without receiving any consideration therefor, and fully understanding the possible effect thereof. This deed always remained in his possession, and there is no proof that the plaintiff ever sought to recover it, to abrogate it, or to do anything which, in any way, so far as she was concerned, weakened or sought to weaken its potentiality. Upon the next day she mortgaged the property and instantly turned over the proceeds to her uncle. He improved it at large outlay in excess of those proceeds. He lived in the house built thereon, and used other parts of the premises as improved for his business. She never gave the property any concern. She never was consulted. It does not appear that she ever made any inquiry or suggestion touching it. She never paid a penny for interest, taxes, or repairs. It does not appear that she ever asserted any title to the land or any right or interest therein. She never received any rent or profits, asked for them or asserted any right to them. This condition of affairs continued for 10 years, until her uncle died, and then when under his will her aunt succeeded, that condition continued until 1894, and then when the aunt died and left her residuary estate to the defendant, as head of the diocese of Brooklyn, he, unchallenged, entered into possession and remained in unquestioned possession and in absolute control until 1902. And it was only when this defendant, after six years unquestioned, undisturbed, beneficial enjoyment, having acquired the mortgages, requested her to perfect the title by inserting his name as grantee in the deeds which she had executed and delivered to her uncle years before, did she depart from absolute acquiescence throughout all these many years by the institution of this and similar actions.

There is one bit of evidence that is, however, not undisputed. The counsel for the defendant testifies that when he called on her to ask perfection of the title, she said that "her uncle had promised to give her the house he lived in when he died." So far, then, as the outside world was concerned, and so far as she herself was concerned, even in her relations with her uncle, he entered into possession, and throughout his life absolutely dealt with the premises as if his own. No act of hers throughout his life betokens that she ever thought that she had any interest, present or future, vested or contingent, in the premises. She did exactly as she was told, even to the full execution and acknowledgment of a deed which, so far as he was concerned, made it possible to divest her of any title whatever. Her self-effacement could no further go. Every fact testified to by her indicates that she held the title as nominal grantee. Her entire conduct throughout seems

consistent with that status. Is it conceivable that, if she was the owner of the property, even if she would have so stood at gaze during her uncle's life, and then during his wife's life for years, she would not, at least, have made some assertion of her rights, or given some notification of her interest to the defendant? She was not bound to him by any tie, or, so far as appears, even constrained by any acquaintance. Is it natural that the real owner and the record owner as well of realty should stand by in silence to see a stranger enter into her premises, enjoy them, and profit from them for six years? It is true that the court finds that the defendant entered into possession without the consent of the plaintiff, and continued without her permission; but so far as the evidential fact is concerned, she testifies:

"Since the time of Bridget's death, I heard that Bishop McDonnell was in possession of the property, of the lands themselves. * * * I knew that from a short time after Bridget's death down to the present time. I knew that from Bridget's death down to the time I commenced these actions the Bishop was paying the expenses of the property, and taking all of the rents."

The learned Special Term finds that she did not have any conversation with the defendant's counsel or make any statement to him. I am inclined to think that finding was by inadvertence; but, in any event, it seems to me that it cannot stand: First, because the defendant's counsel as a witness testifies to it positively; second, because the plaintiff does not deny it, and also testifies, "I didn't have much conversation with Mr. Owens,"—thus admitting that she had some conversation with him; and, third, because opposed to this is only the general statement of her brother-in-law that she (the plaintiff) didn't say anything at that time under his instructions. If she said "that her uncle promised to give her the house in which he lived when he died," the remark is significant almost to the verge of an admission. Such delay with such full knowledge as appears in this case, were the plaintiff a cestui que trust seeking to enforce her rights against a nominal grantee, would be almost if not altogether fatal to her claim. Hill on Trustees, 410. I am well aware of the difference in this case due to the fact that the plaintiff is armed by the legal title, and yet it seems to me that her delay, even under the circumstances, has some significance. Many of these facts are similar to those in Church of St. Stanislaus v. Algemeine Verein, 31 App. Div. 133, 52 N. Y. Supp. 922, affirmed 164 N. Y. 606, 58 N. E. 1086, and, I think, are stronger.