WEBBER v. GILLIES et al.

(Supreme Court, Trial Term, New York County. June 11, 1908.)

1. CHAMPERTY AND MAINTENANCE—GRANTS OF LAND HELD ADVERSELY.

Real Property Law (Laws 1896, p. 603, c. 547) § 225, providing that every grant of lands in the actual possession of one claiming under an adverse title shall be void, does not affect a grant where the grantee is put in possession, at the time of the execution of the deed, of the greater part of the land conveyed, though a small part of it is not in the actual possession of the grantor because of a dispute about the boundary.

2. BOUNDARIES—DESCRIPTION—STREETS.

Where a city, owning the fee of a street, conveys land abutting thereon, the presumption that the grantee takes to the center of the street does not hold; but such presumption applies to the case of an old city street in New York City, in which the fee is not in the city.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 8, Boundaries, § 123.]

3. EVIDENCE—SELF-SERVING DECLARATIONS.

Where a city conveyed lands to different grantees, and there was a dispute as to the boundary between the tracts conveyed, damage and benefit maps cannot control as to the boundary, since they may in a sense be considered as self-serving evidence on the part of the city.

4. VENDOR AND PURCHASER—ADVERSE CLAIM BY GRANTOR.

Any claim on the part of a city, conveying land, that it remained in possession of part of the land conveyed, must be of the clearest kind.

Action by Richard Webber against Wright Gillies and another. Judgment for plaintiff against Wright Gillies, and judgment of dismissal of complaint in favor of defendant Homer R. Gillies.

Early, Weaver & Early (Mr. Weaver, of counsel), for plaintiff.
Frank L. Mayhan (C. B. Augustine, of counsel), for defendants.

FORD, J. This action is brought for the ejectment of the defendants from the triangular piece of land beginning on the northwesterly side of Twelfth avenue at a point 52 feet southwesterly from the corner formed by the southwesterly side of One Hundred and Thirty-Second street and the northwesterly side of Twelfth avenue. The base of the triangle is 11½ feet, and the sides of the triangle meet at a point 15 feet southwesterly from the southwesterly side of One Hundred and Thirty-Second street (as shown on Plaintiff's Exhibit 16 and on Defendant's Exhibit P). The total area of said triangular piece of land is 40 square feet, and its reasonable value is given at $302.19. The defendant Homer R. Gillies neither occupied nor had any ownership in said land at the time of the commencement of this action, and the complaint was dismissed as to him. On the strip of land in question is built part of an independent wall, the whole thickness of which is about 16 inches, and against that wall another independent wall of about the same thickness has been built. Buildings are built on both sides of said walls, of which said walls are parts. The titles of both the plaintiff and of the defendant Wright Gillies (who will hereafter be called the defendant) to the property south and north of this triangular plot were derived from the city of New York, and from the mayor, aldermen, and commonalty of the city of New York, respectively. The title to both pieces vested in the said mayor, aldermen, and

commonalty of the city of New York and the city of New York
through the colonial charters and through letters patent issued by this
state. On July 15, 1855, the mayor, aldermen, and commonalty of
the city of New York deeded property described as follows to one
Peter Lynch:

"Beginning at a point of intersection of the southerly line of One Hundred
and Thirty-Second street with the westerly line of Twelfth avenue; running
thence westerly, along the southerly line of One Hundred and Thirty-Second
street, seventy-four feet; thence southerly twenty-five feet along the line of
original low-water mark; thence easterly eighty-three feet to Twelfth avenue;
thence northerly, along the westerly line of Twelfth avenue, fifty-two feet to
the place of beginning, as shown on a map hereto annexed, the premises hereby
conveyed being colored pink."

A map was annexed to said deed and referred to therein. Through
mesne conveyances said property came to the defendant herein. In
each of the deeds subsequent to the deed from the municipality to
Lynch, the course along the low-water mark is made to run to a strip
of land formerly called Schieffelin street, and thence along said strip
of land to the point on Twelfth avenue, and all the interest of the
grantors in said strip is conveyed to the respective grantees in the
subsequent deeds. Nothing was said in the deed to Lynch about
Schieffelin street, nor was said street shown on the annexed map. In
1890 the building and wall on defendant's property were built by one
of his remote grantors then in possession. The building was made only
15 feet wide in the rear. In the same year the other independent wall
and building were built against the wall on plaintiff's property by a
sublessee of the city. The defendant's wall runs about 2 feet further
back than plaintiff's wall. The city had been the owner of the piece
south of defendant's property from a time long previous to the Lynch
deed in 1855. The New York Central Railroad claimed it, and for
some years previous to 1886 rented it to Charles B. Morris. It was
then discovered that the city had owned it all the time, and from that
date (1886) the city leased it to said Morris, and his possession under
leases from the city continued down to February 24, 1906, when the
city, after due formalities, deeded said property south to the plaintiff.
The deed from the city to the plaintiff contains the following descrip-
tion:

"Beginning at the point of intersection of the northerly side of West One
Hundred and Thirty-First street with the westerly side of Twelfth avenue,
and running thence westerly, along the northerly side of West One Hundred
and Thirty-First street, 87 feet 7 inches to land of the New York Central &
Hudson River Railroad Company; thence southeasterly 83 feet to the wester-
ly side of Twelfth avenue at a point in said westerly side of Twelfth avenue
distant 52 feet southerly from the southwesterly corner of Twelfth avenue and
West One Hundred and Thirty-Second street; running thence southwesterly
68 feet 5 inches; thence northwesterly 28 feet 11 inches; thence again south-
westerly 58 feet 6 inches; thence again southeasterly 39 feet 9 inches to the
westerly side of Twelfth avenue; and thence southerly, along the westerly side
of Twelfth avenue, 17 feet 1 inch, to the point or place of beginning."

The direction of the 186-foot course is not given; but by reference
to the Morris lease it is shown to be along the railroad.

There is a preliminary objection. The defendant claims that the
plaintiff has no right to bring this suit because of the provisions of

section 1501 of the Code and section 225 of the real property law (Laws 1896, p. 603, c. 547). I do not think the point is well taken, as the dispute is about a boundary. Danziger v. Boyd, 120 N. Y. 628, 24 N. E. 482. The defendant claims that this is not a boundary dispute, but that 10 feet to the rear of defendant's land are in question. The pleadings confine the issue to the boundary, and even if the dispute concerned the 10 feet the principle of the above case would apply, as by far the largest part of the plaintiff's property was put in his possession by the city at the time his deed was given. Jones v. Hoyt, 85 Hun, 35, 32 N. Y. Supp. 625. There are two questions which are to be decided:

First. As to the location of Schieffelin street. If the proof showed that the southern boundary of defendant's land ran as a matter of fact along Schieffelin street, his remote grantor, Lynch, would have taken to the center of the strip, in case the original deed had come from a private individual. This presumption does not hold in the case of a grant by municipal authorities, where the fee to the street is in such authorities. Graham v. Stern, 168 N. Y. 517, 61 N. E. 891, 85 Am. St. Rep. 694. But this presumption does apply to the case of an old city street in New York City, in which the fee was not in the city. Paige v. Schenectady R. Co., 178 N. Y. 102, 70 N. E. 213. The proof adduced by the defendant is insufficient to locate Schieffelin street, or to show how it was held, or when or how it was given up. The deeds to defendant's remote grantors subsequent to the Lynch deed do not help the defendant. Any presumption as to the location of Schieffelin street through those subsequent deeds under section 955 of the Code is rebutted by plaintiff's proof. The plaintiff having made out a prima facie case, the burden, as in any other case, was on defendant to prove his affirmative defense. The rule insisted on by the defendant, that plaintiff must recover on the strength of his own title, does not help defendant in this branch of the case.

Second. Where did the line along low water run? There is testimony that the 25 feet ran along the original low-water line, as shown in the so-called Doty map, which was made in the year 1845 and is recognized by all surveyors as authoritative. The evidence satisfies me that the westerly course of the defendant's property along the low-water line extends far enough to include all the triangle in dispute, except the small triangle (shown on Defendant's Exhibit P), 11½ inches on the base and about 5.2 feet on each side, containing about 2½ feet, the reasonable value of which is $50. This triangle is marked "C" on Plaintiff's Exhibit P. It is evident that the surveyors have been unable to reconcile the distance on the two maps attached to the Lynch deed and the Morris lease. In the Lynch deed map the 83 feet southerly course runs to the low-water line, which appears to be still some distance from the easterly line of the railroad; while in the Morris lease the northerly course carries the 83 feet to the said railroad line. Were this a suit involving the 10 feet south of defendant's wall, much clearer proof would be required to explain this discrepancy. But as this involves only the triangle beginning at a point in the low-water line and extending easterly to its base 11½ inches on Twelfth avenue,

and as all of the three surveys, as well as the Morris lease, agree in placing the westerly end of defendant's wall on the railroad line, it is evident that this discrepancy does not affect the case at bar.

The damage and benefit maps cannot control as to defendant's westerly line, as they may in a certain sense be considered as self-serving evidence on the part of the city. The Doty map was made 10 years before the Lynch deed, and cannot control as to the length of said westerly line, although said map is important in fixing the low-water line. There is no proof of any adverse possession on the part of the city or its lessees as to any part of the large triangle mentioned above, and Mr. Morris, the city's lessee, testifies that he never made a claim to this strip. As to the small triangle, containing about 2½ square feet, there has been adverse possession by the plaintiff and his grantors ever since the wall was put up in 1890; but this is not a sufficient time to perfect the title through adverse possession. Of course, any claim on the part of the city, the grantor, that it remained in possession of part of the land grant, must be of the clearest kind. Jackson v. Burton, 1 Wend. 341.

Plaintiff should have judgment that he has an estate in fee in the small triangular piece 11½ inches on Twelfth avenue, extending back about 5½ inches. There is no proof as to the rental value of this small triangle; but, basing it on the proportion of its size compared with the large triangle, the rental value of which has been testified to, plaintiff should have $2.49 annual rental on said triangle since February 24, 1906, down to the date of entry of judgment, together with interest from the date of the commencement of the action on the amount due at that time. Willis v. McKinnon, 178 N. Y. 451, 70 N. E. 962; Fagan v. McDonnell, 115 App. Div. 89, 100 N. Y. Supp. 641.

The defendant Homer R. Gillies should have a bill of costs on the dismissal of his complaint.