### MULLIN et al. v. NOLAN.

(Supreme Court, Special Term, Queens County.)

1. TRUSTS (§§ 17, 18*)—CREATION—PAROL AGREEMENT.
    Where plaintiff sought to subject property which had been held by her mother-in-law to the operation of a passive trust, on the theory that plaintiff's husband had furnished the consideration for the property, turning such money over to his mother by reason of her undue influence, plaintiff must show that the money was paid over by the son under an agreement to hold the same in trust which would be fraudulent if not enforced, or that there has been a partial performance which would take the case out of the statute of frauds.
    [Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 15-24; Dec. Dig. §§ 17, 18.*]

2. TRUSTS (§§ 44, 89, 110*)—ESTABLISHMENT—EVIDENCE.
    Where it was sought to establish a trust on the ground that plaintiff's intestate had supplied defendant's intestate with money for the purchase of certain property, and that the money had been obtained by reason of undue influence, evidence *held* insufficient to establish that plaintiff's intestate had furnished any money, or that he was subjected to undue influence, or that there had been partial performance of the trust.
    [Ed. Note.—For other cases, see Trusts, Dec. Dig. §§ 44, 89, 110.*]

Action by Mary E. Mullin, individually and as administratrix of the estate of John Mullin, and another, against Mary Nolan, individually and as administratrix of the estate of Richard Nolan. Judgment for defendant.

Rudolph Marks, for plaintiffs.
Leander B. Faber, for defendant.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

JAYCOX, J. The plaintiffs seek in this action to have it declared that the defendant, Mary Nolan, holds the title to certain premises at Rockaway Beach as trustee of a passive trust, and that the whole beneficial interest therein is vested in the plaintiffs, and also to have the defendant, as administratrix, account for and pay over certain moneys which they claim were the property of one John Mullin at the time of his death.

Bridget Mullin was the mother of said John Mullin. The plaintiff Mary Mullin is the widow of said John Mullin, and the plaintiff Peter Murray Oldner is the grandson of said John Mullin, the child of a deceased daughter. Mary Nolan is a daughter of the late Bridget Mullin and a sister of the late John Mullin.

[1] It is the contention of the plaintiffs that said John Mullin, by reason of undue influence exerted upon him by his mother and his sister, turned over to his mother large sums of money during a long period of time, and that the real estate in question was purchased by John Mullin with funds paid by him directly for that purpose and with funds which he had previously furnished to his mother and which were paid by her at his request; and the claim to an accounting is based upon the contention that all of the moneys paid over to Bridget Mullin have not been invested in this real estate. Bridget Mullin, prior to her death, deeded the real estate in question to her daughter, Mary Nolan, who is also her administratrix.

The plaintiffs' right to recover depends upon their establishing, first, that the money in question was paid over by John Mullin to his mother; second, that it was paid over under an agreement to hold the same in trust and account therefor, which would be fraudulent if not enforced, or that there has been a partial performance, which would take the same out of the statute of frauds. I am convinced as to none of these propositions.

[2] I do not think the money in question was paid over by John Mullin to his mother. The evidence to the contrary leads me to the conclusion that Bridget Mullin owned the butcher business in New York City, where, it is claimed, the larger part of the money was made. I do believe that the business was conducted by John Mullin, and that some wholesalers dealing with him carried their accounts in the name of John Mullin, and that his mother allowed him to exercise greater liberty in dealing therewith than she would have allowed a stranger; but there is no testimony to show that she ever knew that the accounts were carried in his name. There is some testimony that at least one wagon had "John Mullin," or "J. Mullin," on it. The sign, however, in front of the shop, was merely "Mullin's Meat Market." But, if the wagon did have this name on it, it would not be at all strange if an ignorant woman, as Mrs. Mullin certainly was, would have permitted her son, who drove the wagon, to have his name inscribed on it.

If any payments were made by John Mullin to his mother, I can find nothing in the evidence to indicate that they were the result of undue influence practiced upon him by his mother. The fact that Mrs. Mullin was his mother might have been a potent influence for some time during his early manhood; but during the larger part of the

period covered John Mullin was in the prime of life, and during some portion of the time lived many miles away from his mother and entirely out of the sphere of her influence, and it was while in this situation that some of the property was bought. But her lack of influence and control over him I think is plainly indicated by many facts in the testimony, particularly by the fact that in spite of all her objections he married the present plaintiff in this action. The plaintiff herself concedes that this was against the mother's most strenuous objection, and the testimony shows that when Mrs. Mullin discovered the fact of the marriage she was very angry.

The plaintiff asks the court to infer, from the fact that the mother was opposed to the marriage and that their relations were not always friendly thereafter, that Bridget Mullin induced her son to turn over his money to her, so that the wife could have no claim upon it. If this be true, it seems to me that there is no proof in the case that the present disposition of the property is not entirely in accord with any such assumed arrangement. But I do not think that these facts are sufficient to warrant any finding that undue influence, or influence of any character, was exercised by Bridget Mullin upon her son. There is absolutely not a scintilla of evidence to prove any agreement by Bridget Mullin to hold this property as trustee and to dispose of it as John P. Mullin directed. The plaintiffs' attorney concedes this in his brief when he says:

"Furthermore, under the theory in this action, no express trust has been claimed. What has been proven is a set of facts based on confidential relations and undue influence, from which the law has justly inferred that a trust ex maleficio has been constructed. That is an implied trust."

Therefore this case is distinguishable from Wood v. Rabe, 96 N. Y. 414, 48 Am. Rep. 640, and many of the cases cited by the plaintiffs. In those cases the agreement between the parties was clearly made out. In this case, to which I have called special attention, Wood v. Rabe, and which I consider a type of the cases submitted by plaintiffs, the agreement was uncontradicted that the defendant in that action would take the title to the property by means of the confession of judgment which her son made upon her advice and the advice of her attorney, his former guardian, and that she would turn the property over to him at any time when the payments specified in the agreement had been made. This situation clearly distinguishes the present case from those cases. In the present case no agreement has been shown, and the court is asked to find that undue influence or fraud exists from a set of circumstances which would be equally consistent with the absence of fraud or undue influence. The fact that John Mullin occupied some portion of the premises at Rockaway Beach is equally as consistent with an affectionate motherly care for him as it is with any theory that he occupied them under a claim of right. His payment of the taxes and insurance would be but a natural concomitant of his occupying rent free. The mother occupied apparently such portion as she saw fit, and, so far as the situation of the premises is concerned, apparently premises of equal value, without in any way paying rent or accounting therefor in any manner.

I think the cases of Fagan v. McDonnell (No. 1) 115 App. Div. 89,

100 N. Y. Supp. 641, and Angermiller v. Ewald, 133 App. Div. 691, 118 N. Y. Supp. 195, are particularly applicable to this case. If it be conceded that John Mullin gave the money in question to his mother, there is nothing to base a finding upon that it was the result of undue influence, or induced by any agreement which, if not enforced, would permit the defendant to perpetrate a fraud. The facts which the plaintiffs rely upon to establish an agreement or undue influence are the same facts and circumstances which they rely upon to take the case out of the statute of frauds. In Fagan v. McDonnell, supra, it was said:

"The error of this is so patent that it is unnecessary to consider whether the circumstances relied upon would have been sufficient, had the agreement itself been proved."

I can excerpt the following sentence from that case as also particularly applicable to this case:

"I followed the ingenious argument of counsel, and have read his voluminous brief in vain to discover a single circumstance tending to show that any one has been misled or injured by any conduct of the plaintiff."

In this case the last word of the sentence should be defendant.

The defendant is entitled to judgment dismissing the complaint upon the merits, with costs.