receiver made the agent's contract impossible of performance, and where the court say at page 179:

"The state, by the injunction order operating alike upon the company and its agents, paralyzed the action of both the contracting parties, so that neither could perform [by putting] the other in the wrong. Thereupon the company could not refuse, and did not refuse. To put it in the wrong, and make it liable for a breach, required action on the part of Mix. As a condition precedent he was bound to show both ability and readiness to perform on his part. Shaw v. Republic Life Ins. Co., 69 N. Y. 292; James v. Burchell, 82 N. Y. 113. He could do neither. Performance by him had become illegal. It would have been a criminal contempt, and possibly a misdemeanor. There could be neither readiness nor ability to do the forbidden and unlawful acts."

And further on the court say:

"What had happened was a dissolution of the contract by the sovereign power of the state, rendering performance on either side impossible. And this result was within the contemplation of the parties, and must be deemed an unexpressed condition of their agreement."

From this consideration of the pleadings in this case we have reached the conclusion that they present no issues of fact, the determination of which in favor of the plaintiff would entitle him to a judgment against the defendant.

The order denying defendant's motion for judgment on the pleadings is reversed, with $10 costs and disbursements, and the motion granted, with $10 costs. Order filed. All concur.

---

(174 App. Div. 29)

IRVING NAT. BANK et al. v. GRAY et al.

(Supreme Court, Appellate Division, First Department. July 10, 1916.)

1. FRAUDULENT CONVEYANCES ☞208—TRANSACTIONS INVALID—SOLVENCY OF GRANTOR.

Under Real Property Law (Consol. Laws, c. 50) § 94, providing that a grant of realty is presumed fraudulent as against the creditors, at that time, of a third person paying the consideration, and unless fraudulent intent is disproved, a trust results in favor of the creditors, but title vests in the grantee, and no trust results in favor of the person paying the consideration unless the grantee takes the conveyance without the consent and knowledge of the person paying the consideration, or, in violation of some trust purchases the property so conveyed with money or property of another, where one who furnishes the consideration has property conveyed to his wife or to a corporation, no trust results in favor of subsequent creditors.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 631, 633; Dec. Dig. ☞208.]

2. CREDITORS' SUIT ☞8(1)—PROPERTY WHICH MAY BE REACHED—PLEADING.

A complaint alleging the conveyance to defendant's wife and to a corporation of realty on consideration furnished by the defendant prior to the entry of judgment in favor of plaintiffs against defendant, cannot be sustained as a complaint in a judgment creditor's action, since, under Real Property Law, § 94, the defendant retained no interest in the property so conveyed.

[Ed. Note.—For other cases, see Creditors' Suit, Cent. Dig. §§ 12–18, 23, 28–30, 34, 36–40; Dec. Dig. ☞8(1).]

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. PLEADING &#8258;8(15)—FORM OF ALLEGATIONS—MATTERS OF FACT OR CONCLUSIONS.

Where a defendant without consideration had conveyances made to his wife and to a company while he had no creditors, allegations that these acts were performed with intent to hinder and delay creditors are conclusions of law only.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. § 28½; Dec. Dig. &#8258;8(15).]

4. PLEADING &#8258;8(11)—FORM OF ALLEGATIONS—CONCLUSIONS OF PLEADER.

Allegations that defendant is the sole beneficial owner of realty and personalty, record title of which is in defendant's wife and a corporation, all of which was acquired with consideration furnished by defendant, and that the property is held by the wife and the company for his use and benefit and subject to his control and disposal, are statements of legal conclusions only, from which no inference can be drawn that there existed any mutual secret agreement between husband and wife to defraud subsequent creditors.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. § 23; Dec. Dig. &#8258;8(11).]

Appeal from Special Term, New York County.

Action by the Irving National Bank and others against Lydia B. Gray and others. From a judgment entered on decision dismissing the complaint, plaintiffs appeal. Affirmed.

Argued before CLARKE, P. J., and LAUGHLIN, DOWLING, PAGE, and DAVIS, JJ.

I. Gainsburg, of New York City, for appellants.
William W. Pellet, of New York City, for respondents.

DAVIS, J. Plaintiffs bring this action as judgment creditors of defendant Olin D. Gray against him, his wife, and the Gray Realty & Development Company, to impress a trust upon certain real property standing in the name of Gray's wife and the Realty Company, for which it is alleged the judgment debtor furnished the consideration and purchase money. So far as it can be gathered from the complaint, this consideration and purchase money were furnished by Gray prior to the time when the plaintiffs became creditors of Gray.

At the opening of the trial the court granted the motion to dismiss the complaint on the ground that it failed to state facts constituting a cause of action. The complaint takes up 38 pages of the printed record. The first 22 paragraphs relate to the corporate character of the plaintiffs and the defendant company, the recovery of various judgments against defendant Olin D. Gray, and the issuance and return of executions on said judgments. There are no allegations as to when the causes of action upon which these judgments were rendered arose; but it does appear that the earliest judgment was rendered July 29, 1914, and that the other judgments referred to were entered after that date. Thus, at the time the various conveyances were made and the consideration therefor furnished by Gray, the plaintiffs were not creditors of the defendant Olin D. Gray, nor does it appear that at that time there were any other creditors of Gray. The next 10 paragraphs are to the effect that from a period antedating 1900

and up to June, 1910, Gray controlled the Gray Lithographing Company; that its business was very profitable; that he drew large sums from it for his own use; that he sold the business in 1910 for a large sum; that since the establishment of the company Gray had given his wife large sums of money from his income and from his sales of real estate, which she deposited in banks in her name, but for the use and benefit of Gray; that Gray deposited part of his income in his own name, and that both Gray and his wife deposited large sums of money from Gray's income to the credit of the defendant company. Paragraphs 33 to 54 are to the effect that from 1900 to 1914 Gray invested the money so deposited in real estate, placing the title as a rule either in the name of his wife or in the name of the company, which company he had organized in 1908 to facilitate his operations in real estate; that some of the shares of this company were issued to his wife for the pretended consideration from her of premises 40 East Eightieth street, which had been bought with Gray's money, although title was placed in his wife's name; that 65 shares of the stock of this company were issued to Gray in consideration of his transfer to it of premises 1045 Madison avenue, and that without consideration these shares were transferred to his wife to be held for his use, although there is no allegation that she agreed to hold them for his use.

It also appears from the complaint that all of the foregoing transactions took place before the plaintiffs had any business transactions with the defendants whatever, and there is no allegation that Gray had any creditors or was in failing circumstances at that time. Then follow other allegations to the effect that certain other pieces of real estate were conveyed to Mrs. Gray, her husband paying the consideration therefor, among which was No. 133 West Forty-Second street, which she afterwards sold, receiving therefor large mortgages and $35,000 cash; that she afterwards sold these mortgages, and that Gray invested $30,000 of the proceeds of these mortgages in the John J. Mitchell Company, Incorporated, and that in 1914 this company, by reason of the fact that Gray was well and favorably known, obtained large discounts from the plaintiffs upon the security and indorsement of Gray upon the negotiable paper of the Mitchell Company, and that thereafter the Mitchell Company became insolvent.

There is no allegation that the plaintiffs relied on the credit thus established by Gray, or that he made any representations regarding his credit, or that at the time he became indorser the Mitchell Company was insolvent, or that any representation as to its solvency was made by anybody. Then there is an allegation that the judgment debtor, Gray, is the sole and beneficial owner of the real estate described, title to which is either in Mrs. Gray or in the Realty Company; that it was all acquired with Gray's money; and that the other defendants allowed him to deal with it as his own, as a result of which he established a large credit.

Briefly this complaint alleges that Gray transferred certain property to his wife and to the Gray Realty Company without any consideration, and that certain other property was paid for by Gray, but that title thereto was taken in the name of his wife or in the name of

the company; that these transfers stand in the way of a seizure of said property by the plaintiffs, and that Gray, with intent to hinder, delay, and defraud his creditors, "conceals and denies ownership" of said property; that by reason of the fact that title is not in him, the judgments of the plaintiffs are prevented from becoming liens thereon; that the property was held by Mrs. Gray and the Realty Company for the use and benefit of the defendant Gray, and that all of the defendants withhold the property with intent to hinder and delay the collection of the judgments of plaintiffs, and that the acts of the defendants are for the purpose and with the intent to hinder, delay, and defraud plaintiffs, and that Gray has no other property. The prayer for judgment asks, among other things, that all of said property be decreed to be held in trust for the plaintiffs and that defendants account therefor, etc.

[1] The question which is raised here is whether plaintiffs have the right to impress a trust upon this real estate held by Mrs. Gray and the Realty Company, upon the mere allegation that the judgment debtor paid for the property, and with intent to hinder and delay his creditors had title placed in the names of his wife or the Realty Company, without any allegation that at the time title was taken the plaintiffs were creditors of the defendant Olin D. Gray. The court below dismissed the complaint on the ground that the plaintiffs do not allege that at the time of the acts complained of they were existing creditors, or that the transfers were made with intent to defraud subsequent creditors. In coming to this decision the court relied upon section 94 of the Real Property Law which reads as follows:

"A grant of real property for a valuable consideration, to one person, the consideration being paid by another, is presumed fraudulent as against the creditors, at that time, of the person paying the consideration; and, unless a fraudulent intent is disproved, a trust results in favor of such creditors, to an extent necessary to satisfy their just demands; but the title vests in the grantee, and no use or trust results from the payment, to the person paying the consideration, or in his favor, unless the grantee either (1) takes the same as an absolute conveyance, in his own name, without the consent or knowledge of the person paying the consideration; or (2) in violation of some trust, purchases the property, so conveyed with money or property belonging to another."

Under this section a trust results only in favor of creditors existing at the time of the transfers, not subsequent creditors, as these plaintiffs were. Therefore the failure to allege the plaintiffs were creditors at the time of the transfers prevents the plaintiffs from recovering on the theory of a trust resulting in favor of the plaintiffs under this section.

Under the common law the facts alleged in this complaint would make out a trust in favor of the person paying the consideration for the conveyance, and his interest under this trust could be seized and sold under execution for the benefit of existing or subsequent creditors. But since the adoption of the Revised Statutes (1 R. S. 728, §§ 51, 52), of which section 94 of the Real Property Law is a re-enactment, the common-law rule has been changed, so as to prevent a trust under such circumstances resulting in favor of the person paying the con-

sideration. Such a trust now results only in favor of existing creditors. It was so held in the case of Garfield v. Hatmaker, 15 N. Y. 475, where the court say:

"The resulting trust of the common law [in favor of creditors] is abrogated in the most explicit terms. The person paying the consideration money must take the conveyance to himself, or he can have no legal or equitable interest in the land. * * * There is no interest, legal or equitable, in the debtor, and therefore nothing to which a judgment and execution can attach; but instead of this there is a pure trust in favor of the creditor, which the statute impresses upon the legal estate in the hands of the grantee in the conveyance, and which can be enforced in equity only."

See, also, McCartney v. Bostwick, 32 N. Y. 53; Fagan v. McDonnell, 115 App. Div. 89, 100 N. Y. Supp. 641; Binkowski v. Moskiewitz, 144 App. Div. 161, 128 N. Y. Supp. 803; London v. Epstein, 138 App. Div. 513, 516, 123 N. Y. Supp. 399.

[2, 3] Nor can the complaint be sustained as a complaint in a judgment creditor's action. Under the facts as pleaded here the judgment debtor had no interest of any kind in the property described in the complaint which could be reached in a judgment creditor's action. The object of a judgment creditor's action is to reach some interest of the judgment debtor in the property. Here the judgment debtor by virtue of section 94 of the Real Property Law retained no interest therein, and, as stated above, no trust can be impressed upon the property, because it does not appear that plaintiffs were existing creditors. Niver v. Crane, 98 N. Y. 40. As to the property conveyed by Gray directly and, as alleged, without consideration to his wife or to the company, there can be no doubt that they were quite legal so long as he had no creditors at the time and so long as these transfers were not made to defraud subsequent creditors. The complaint contains no allegations of fact tending to support such a claim of fraud. There are allegations that certain acts (lawful in themselves) were performed with intent to hinder and delay creditors, but these are conclusions of law only, and cannot make unlawful acts that are perfectly lawful in themselves.

The case at bar in principle is quite like the case of Binkowski v. Moskiewitz, supra. In that case Justice Miller said at page 163 of 144 App. Div., at page 805 of 128 N. Y. Supp.:

"We have then the bare fact that the said defendant's husband, with her knowledge and consent, paid the consideration and procured the title to be taken in her name, for the purpose of placing the property beyond the reach of future creditors. No trust results from such a transaction, and certainly equity will not construct one."

[4] In one part of the complaint we find the following allegation:

"That the defendant Olin D. Gray is the sole and beneficial owner of the above-described real and personal property, record title to which is in the said Lydia B. Gray and Gray Realty & Development Company, all of which was acquired with the moneys, income, and profits of the defendant Olin D. Gray, directly or indirectly."

And further on:

"That such of the personal and real property as are now in the possession of said Lydia B. Gray and Gray Realty & Development Company are held

by the said defendants for the use and benefit of the defendant Olin D. Gray, and subject to his control and disposal."

It has been shown that these allegations will not warrant the finding of a resultant trust under section 94 of the Real Property Law. The suggestion contained in these allegations is that of a secret agreement between defendant Gray and his wife to hold the property for his use and benefit for the purpose of defrauding creditors, present and future; but there is no allegation of such an agreement. As they stand, they are statements of legal conclusions only, from which no inference can be drawn properly that there existed any mutual, secret agreement between the husband and wife.

In the Binkowski Case, supra, the allegation was:

"That the defendant Regina Moskiewitz had full knowledge of all of the facts connected with the purchase of the said property, and consented to and did receive the title thereto, and held the same in trust for the said Max Moskiewitz, deceased."

Referring to the above allegation the court say:

"From that it is to be inferred that the said defendant had knowledge of her husband's purpose in taking the conveyance in her name, and that she consented to and did receive the legal title with that knowledge. It does not follow, from that, that she agreed to hold the legal title in trust for her husband. The statement that she 'held the same in trust for the said Max Moskiewitz, deceased,' is but the statement of a legal conclusion, and does not justify the inference that she agreed thus to hold the legal title."

The judgment is affirmed, with costs. All concur.